**Carl Michael SEIBERT,
Plaintiff-Appellant,**

**v.**

**D. T. BAPTIST, District Director of
Internal Revenue Service, et al.,
Defendants-Appellees.**

**No. 78–3007
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 3, 1979.

* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Carl Michael Seibert, pro se.

J. R. Brooks, U. S. Atty., Birmingham, Ala., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Gary R. Allen, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for Duck & Patterson.

Watts, Salmon, Roberts, Manning & Noojin, Huntsville, Ala., for defendants-appellees.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

PER CURIAM:

AFFIRMED on the basis of the Memorandum of Opinion of United States District Judge Sam C. Pointer, Jr., a copy of which is an appendix hereto.

APPENDIX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Northeastern Division

CARL MICHAEL SEIBERT, )
)
Plaintiff, )
)
–vs.– )   NO. CA 77–P–0951–NE
)
)
)
D. T. BAPTIST, DISTRICT )
DIRECTOR OF INTERNAL REVENUE, )
et al., )
)
Defendants. )

## MEMORANDUM OF OPINION

### BACKGROUND

What can only be characterized as an unusual set of events has led to the defendants' motion to dismiss the plaintiff's complaint. It is this motion which is currently before the court. Since both parties have submitted memoranda and affidavits in support of their respective positions, the motion will be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

On July 7, 1972, plaintiff Carl Michael Seibert was arrested by the Huntsville Police Department for possession of LSD. At the time of his arrest plaintiff was apparently driving his father's car. The Huntsville Police seized the car and its contents, which included a guitar and a currency collection.

On July 10, 1972, agents of the Internal Revenue Service served plaintiff with a Notice of Termination of Taxable Period pursuant to Section 6851 of the Internal Revenue Code [1] by which plaintiff's income tax liability for the period January 1, 1972, to July 7, 1972, was made immediately due and payable. Plaintiff was also served with a Notice of Seizure under I.R.C. Section 6331.[2] By this notice it was indicated that

---

1. 26 U.S.C.A. § 6851, as it was in force in 1972, reads in applicable part as follows:
   "If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, . . . the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated . . . ."

2. 26 U.S.C.A. § 6331. In applicable part, that section reads as follows:

   "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person . . . . If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

the car and its contents previously impounded by the Huntsville police were being seized by the IRS in partial payment of tax deficiencies proposed against plaintiff in the amount of $6,458.00. Plaintiff was never given information about how the deficiency was computed.

At this point, it becomes difficult to determine just what events transpired, and in what order. According to plaintiff's amended complaint, on October 19, 1972, plaintiff and his father initiated suit in federal court to enjoin the IRS from selling the seized property at auction, and to compel an explanation of the basis for the seizure. That suit was dismissed by the district court as to all material issues on November 1, 1972.[3]

At some point during this sequence of events, defendants' memorandum in support of its motion to dismiss indicates that the termination assessment against plaintiff was abated and a notice of deficiency[4] was issued to the plaintiff.[5] In response to the notice, plaintiff filed a petition for redetermination of his tax deficiency,[6] with the United States Tax Court. Upon a stipulation of the parties, the Tax Court entered an order on January 17, 1977, to the effect that there had been an overpayment in

income taxes by plaintiff for the 1972 tax year in the amount of $2,893.15.[7] By the terms of the stipulation incorporated into the Tax Court's order, plaintiff did not waive "any rights he may now have to proceed against the Internal Revenue Service or any employee for damages or restitution on account of the seizure and release of certain personal property . . ." It is this reservation of rights which forms the basis of the present controversy.

## THE PENDING LITIGATION

On July 11, 1977, plaintiff proceeding *pro se*, filed a complaint against the District Director of the Internal Revenue Service, four officials of the IRS, two Huntsville Policemen, and a Madison County Circuit Judge.[8] The complaint, without alleging any statutory basis for relief or grounds for jurisdiction of the court, sought recovery of property seized by the IRS, or compensation therefor. On defendants' motion, the court dismissed this complaint and granted the plaintiff thirty (30) days to amend the complaint to state a jurisdictional basis for the cause of action. Pursuant to this order, on January 3, 1978, plaintiff filed an amended complaint which the defendants' pending motion seeks to have dismissed.

---

3. *Seibert v. D. T. Baptist,* CA No. 72–936–NE (N.D.Ala.1972). The basis for the dismissal was apparently 26 U.S.C.A. § 7421(a) which provides in material part:

"... [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom [the] tax was assessed."

See *Enochs v. Williams Packing Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

4. 26 U.S.C.A. § 6212 provides that a taxpayer be notified in the event any deficiency in taxes owed is declared against such taxpayer.

5. A stipulation entered into between the plaintiff and the Internal Revenue Service pursuant to plaintiff's request for a redetermination of his deficiency indicates that the deficiency notice was mailed August 7, 1974. The exact reason for the lengthy delay between the original termination assessment and notice of deficiency is not clear.

6. 26 U.S.C.A. § 6213(a) allows a taxpayer, within 90 days after notice of deficiency, to file a petition with the Tax Court for a redetermination of the deficiency.

7. *Seibert v. Commissioner of Internal Revenue,* No. 8724–74 (U.S.T.C. Jan. 17, 1977).

8. Defendants Randall Duck and Gary Patterson, Huntsville Police Department officers, were dismissed as defendants by an order of this court dated October 4, 1977. Defendant, David R. Archer, a Madison County Circuit Judge, was determined to be insulated from liability by judicial immunity on November 10, 1977. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Plaintiff failed to amend his complaint to state a cognizable claim against Archer within the 30 days granted by the court's order. Thus, the only remaining defendants are five officials of the Internal Revenue Service.

By his amended complaint, the plaintiff alleged jurisdiction of this court pursuant to the fifth and fourteenth amendments to the United States Constitution, and under 28 U.S.C. §§ 2201–02, § 1331, § 1343, and 42 U.S.C. §§ 1983, 1985, and 1986. The gravamen of plaintiff's amended claim is that defendant IRS officials have abused their authority under 26 U.S.C.A. § 6851 to terminate plaintiff's taxable period, and that they did not follow the prescribed procedure under 26 U.S.C.A. § 6861 [9] to make jeopardy assessments of income tax deficiency. Broadly read, plaintiff's complaint also alleges that the defendants subjected him to malicious prosecution and harassment, that they unlawfully seized his property, caused him and his family mental anguish, and denied him due process and the equal protection of the laws. In his prayer for relief plaintiff requests return of, or compensation for, all previously seized property,[10] as well as compensatory and punitive damages, costs, and attorney's fees.

## JURISDICTION OF THE COURT

The district courts of the United States are courts, the jurisdiction of which is "lim-

ited to those cases within Art. III, Sec. 2 of the Constitution over which an Act of Congress has given [them] jurisdiction." [11] Serious questions are presented here with respect to whether this court has the authority to decide the potential merits of this case. Each of the jurisdictional allegations asserted by the plaintiff therefore requires close scrutiny.

## CONSTRUCTION OF PLAINTIFF'S CLAIM AS ONE AGAINST THE SOVEREIGN

Defendants have devoted a substantial portion of their memorandum to the proposition that the plaintiff's claim, while nominally filed against officials of the Internal Revenue Service, is in actuality a suit against the United States as real party in interest. As such, defendants argue, plaintiff's claims are barred by the doctrine of sovereign immunity, by which the United States may not be sued without its consent.[12] Defendants also point out that while the Federal Tort Claims Act [13] swept aside a large portion of the government's

---

9. In material part, 26 U.S.C.A. § 6861 reads as follows:

   "If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency  .  .  .  and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

10. As previously indicated, the seized property included an automobile, a guitar, and a currency collection. According to defendants' memorandum, the car was released to plaintiff's father on a showing that he was its owner. The guitar, defendants state, was also released to a third person, Ms. Veronica Louise Potter, who demonstrated ownership of it. Plaintiff contends, however, that Ms. Potter had given the guitar to him as a gift, so that its release to her was improper. The final item seized was a sum of money which plaintiff claims was a currency collection of sequentially-numbered, uncirculated bills and silver certificates. Defendants' memorandum, however, suggests that when the money was seized there was nothing indicated by its appearance which distinguished it as a collection, and further, that a list of the serial numbers of the bills made at

the time of the seizure indicated that none of them were sequentially numbered.

11. *Johnson v. Stevenson*, 170 F.2d 108 (5th Cir. 1948), *cert. denied* 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069.

12. *See, e. g., Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 141, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Alabama*, 313 U.S. 274, 281, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941).

13. By 28 U.S.C. § 1346(b), the district courts are given "exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Substantive provisions of the Tort Claims Act are found at 28 U.S.C. § 2671 *et seq.*

immunity for the tortious conduct of its employees, the plaintiff may not seek recovery under the Act for a number of reasons. Most notable among these reasons asserted for the nonapplicability of the FTCA is the 28 U.S.C. § 2680(c) exclusion from the Act's provisions of "[a]ny claim arising in respect of the assessment or collection of any tax . . . ."[14]

■ To the extent, then, that the plaintiff's complaint is read to assert a claim against the United States, it would appear that this claim is barred by the doctrine of sovereign immunity, and the absence of any statutory exceptions for actions of the kind presented here. The court is of the opinion, however, that this determination does not dispose of the litigation. Presumably, defendants' sovereign immunity theories resulted from their expectation that the United States Supreme Court would clothe all federal executive department officials in the protection of absolute immunity from damages for injuries caused by their unconstitutional conduct. Had the Court adopted such an approach, the plaintiff's only possibility for recovery would have been against the United States. Contrary to defendants' expectations, however, in *Butz v. Economou*, —— U.S. ——, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that in suits for damages arising from unconstitutional action, federal executive officials are entitled only to the qualified im-

munity set out in *Scheuer v. Rhodes*.[15] This decision suggests the possibility of a claim by the plaintiff against the defendant officials in their individual capacities. The question whether such individual liability may in fact be imposed on the defendants requires consideration at this point.

## JURISDICTION OF THE DISTRICT COURT OVER CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

As noted previously, by the amended complaint, plaintiff alleged jurisdiction of this court over his claims against the defendants under several statutory and constitutional provisions. It appears clear that the statutory bases are without merit, and can be considered without extensive discussion. The possibility, however, of a direct action under the fourth or fifth amendments, based on the court's general 28 U.S.C. § 1331 "arising under" jurisdiction[16] requires close scrutiny.

■ The first statutory basis for jurisdiction asserted by the plaintiff is the declaratory judgment provision of 28 U.S.C. §§ 2201–02. That this statute alone will not support plaintiff's cause of action is apparent for two reasons. First, the declaratory judgment sections do not establish an independent basis for federal jurisdiction, but rather only establish a separate remedy available in cases where jurisdiction otherwise exists.[17] Secondly, even if the declara-

---

**14.** 28 U.S.C. § 2680(c). Other asserted justifications for the nonapplicability of the FTCA include plaintiff's apparent failure to exhaust administrative remedies as required by 28 U.S.C. § 2675(a), the 28 U.S.C. § 2680(a) exclusion from the Act of claims arising from the performance by a government official of discretionary duties, and, finally, the exclusion under 28 U.S.C. § 2401(b) of all claims not raised within the period of the Act's two-year statute of limitations.

**15.** 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1975). In *Scheuer*, the Court dealt with the degree of immunity to be accorded state executive officials from civil rights actions under 42 U.S.C. § 1983. There the Supreme Court held that such officials were entitled to a qualified immunity from damage liability for constitutional deprivations. The extent of this immunity was seen to depend upon factors including

the "scope of discretion and responsibilities of the office," "the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based," and the "reasonable grounds" and "good-faith" belief in light of such circumstances by the officials that their actions were appropriate. 416 U.S. at 247–48, 94 S.Ct. at 1692.

**16.** 28 U.S.C. § 1331(a) provides as follows: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

**17.** See, e. g., *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968, 969 (5th Cir. 1975); *Brown & Root, Inc. v. Big Rock Corporation*, 383 F.2d 662, 666 (5th Cir. 1967).

tory judgment provisions authorized federal jurisdiction independently of any other basis, 28 U.S.C. § 2201 by its terms specifically excludes the use of declaratory judgments "with respect to Federal taxes." Clearly, then, this court has no jurisdiction over plaintiff's claim by virtue of 28 U.S.C. § 2201–02.

The plaintiff also alleges that federal jurisdiction is conferred over the present controversy by 28 U.S.C. § 1343. This statute is the jurisdictional basis for suits under 42 U.S.C. §§ 1983 and 1985. These sections allow a plaintiff to redress the deprivation of civil rights by authorities who act under the color of state law or by those who conspire to deprive such rights. In addition to 42 U.S.C. §§ 1983 and 1985 plaintiff further alleges the applicability of 42 U.S.C. § 1986, under which a person may be held liable for damages if such person neglects to attempt to prevent a conspiracy to deprive constitutional rights as such conspiracy is defined in § 1985.

A recent per curiam decision of the Fifth Circuit Court of Appeals disposes of this asserted basis for federal jurisdiction in a manner adverse to plaintiff's contention. In *Mack v. Alexander*, 575 F.2d 488 (5th Cir. 1978), the plaintiff filed suit against certain officials of the Internal Revenue Service based on the defendants' alleged violations of constitutional rights stemming from an IRS attempt to levy on a joint bank account held by plaintiff and another party. Federal jurisdiction was asserted under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1983 and 1985. In upholding the district court's dismissal of the action, the Fifth Circuit spoke in language applicable to the controversy *sub judice* :

"Section 1343 places original jurisdiction in the district courts when there is a substantive claim for violation of 42 U.S.C. §§ 1983 and 1985. However, we agree with the district court's ruling that these statutes provide a remedy for deprivation of rights under color of state law and do not apply when the defendants are acting under color of federal law."

575 F.2d at 489 (citation omitted). In the present case, similarly, plaintiff's only claims are that the defendants abused their authority under the federal Internal Revenue Code.

The final basis for jurisdiction asserted by the plaintiff, and the one which is by far the most complex is the general federal question jurisdiction of 28 U.S.C. § 1331. This statute provides the jurisdictional basis for civil actions which arise under the Constitution, laws, or treaties of the United States. Since, as indicated previously, there is no statutory authorization for damage claims against IRS officials, a cause of action supportable under § 1331 would have to be one which arises under the Constitution of the United States. Plaintiff has made such an "arising under" claim by virtue of his allegation that he was denied the due process and equal protection guaranteed to him by the fifth amendment to the Constitution.[18] Further, while the defendants' memorandum denies that plaintiff has ever alleged any fourth amendment violations (Memorandum in Support of Motion to Dismiss at 14), the court concludes that the plaintiff's complaint can be read to allege an unreasonable seizure of his property. Whether or not such fourth and fifth amendment claims will support an action based on 28 U.S.C. § 1331 remains to be determined.

## BIVENS, BUTZ, AND DAVIS V. PASSMAN

As indicated previously, the Supreme Court's recent decision in *Butz v.*

---

[18.] Unlike the fourteenth amendment, the fifth amendment has no independent equal protection clause. However, the Supreme Court has held that the fifth amendment's due process clause "prohibits the Federal Government from engaging in discrimination that is 'so unjustifia-

ble as to be violative of due process.' " *Schlesinger v. Ballard*, 419 U.S. 498, 500 n.3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), quoting *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

*Economou* [19] determined that federal executive officials are entitled only to a qualified immunity from suits for damages arising from their unconstitutional action. The Court was careful to point out, however, that not all allegations of deprivations of constitutional rights can be made the basis for damage claims. Rather, "[u]nless the complaint states a *compensable claim for relief under the Federal Constitution,* it should not survive a motion to dismiss." [20] To this date, the only previously-recognized "compensable claim for relief under the Federal Constitution" has come from *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In that case, the Supreme Court held that a violation of the fourth amendment by federal narcotics officials gave rise to a cause of action for damages consequent upon the unconstitutional conduct, and based on the general federal question jurisdiction of the federal courts. While presented with an opportunity to do so, the Court in *Butz v. Economou* specifically refused to consider which, if any, other personal interests are protected by the Constitution.[21] Resolution of plaintiff's constitutional claims in the pending litigation then, depends upon *Bivens* itself, as well as on the Fifth Circuit's en banc decision in *Davis v. Passman,* 571 F.2d 793 (5th Cir. 1978).

*Davis v. Passman* is an extremely important case from the standpoint of the matter *sub judice* for two reasons. First, based on an analysis of how the Supreme Court had implied the fourth amendment cause of action in *Bivens,* the Fifth Circuit determined that no corresponding constitutional cause of action existed under the fifth amendment for an allegedly discriminatory dismissal of the plaintiff by her employer, a former member of Congress. Secondly, and again based on its analysis of the Supreme Court's *Bivens* decision, the Fifth Circuit

also suggested that not even all alleged violations of the fourth amendment will support the cause of action which *Bivens* implied. The consequences of this analysis in *Davis* will be seen to be dispositive of the remaining matters presented in the current litigation.

The *Davis* case tested the cause of action implied in *Bivens* from two standpoints. The first approach considered the action as implied not solely on constitutional authority, but rather from the constitutional protections of the fourth amendment, buttressed by analogy to statutorily-implied causes of action where Congress had created federal rights but had provided no corresponding federal remedy. Since the right to be secure from unreasonable searches and seizures was viewed as one of the most fundamental of federal rights, and since the exclusionary rule of *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) had proven to be a less than satisfactory remedy, the damages cause of action was viewed as necessary to effectuate the amendment. The second approach, distinguished from that found to have been used by the Supreme Court in *Bivens,* was determined to be appropriate only in situations in which the Constitution compels the existence of a damages remedy to vindicate the rights asserted.

Having found that the *Bivens* cause of action evolved from both constitutional and statutory bases, the Fifth Circuit tested the propriety of implication of a fifth amendment cause of action under the principles of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), "the Supreme Court's most comprehensive treatment of implied statutory causes of action." [22] In that case, the Supreme Court had listed four factors to be considered in the decision

---

19. 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

20. *Id.* at 507, 98 S.Ct. at 2911 (emphasis added).

21. *Id.* at 486, 98 S.Ct. at 2900, n.8.

22. 571 F.2d at 796.

whether to imply a cause of action from a statutory right: (1) whether the provision asserted creates an especial right in the plaintiff; (2) whether the action of Congress in the field indicates an intent to allow such a remedy or at least an intent not to deny the remedy; (3) whether implication of the remedy would be consistent with the purpose of the right asserted; and (4) whether the cause of action implied would be one appropriate for federal law.[23]

In light of these factors, the Fifth Circuit attached a great deal of significance in *Davis v. Passman* to the fact that congressional amendments of Title VII had consistently avoided inclusion of the federal government within the Civil Rights Act's definition of the term "employer." Consequently, in *Davis*, the court determined that no federal common law cause of action was due to be implied under the fifth amendment for alleged employment discrimination by a former Member of Congress. Similarly, under the second prong of the two-prong test for implying causes of action, the court of appeals also held that a fifth amendment cause was not constitutionally compelled. This determination was based on the realization that not all rights included within the breadth of due process demanded federal protection through a direct cause of action.

While this discussion of *Davis v. Passman* has been somewhat lengthy, the court believes that such analysis is required since that decision is viewed as dispositive of the remaining issues in the current controversy. Fortunately, in applying *Davis* to the present facts, the same considerations will be relevant to the plaintiff's asserted implied causes of action under both the fourth and fifth amendments. For the reasons which appear below, the court has concluded that such causes of action are not to be implied in the present situation. Following the approach adopted in *Davis*, a brief analysis of the current controversy in light of the relevant factors from *Cort v. Ash*, for implying causes of action is required.

The first such factor to be considered is whether the constitutional provisions asserted—here the fourth and fifth amendments—create an especial right in the plaintiff. The Fifth Circuit approach to this "especial right" requires that the injury inflicted on the plaintiff must directly infringe upon a constitutional guarantee. As pointed out in *Davis*, however, due process encompasses virtually all civil liberties embodied by the Constitution. As such, an allegation of the denial of due process does not appear to satisfy the requirement of direct infringement of a constitutional right. Similarly, while in *Bivens* infringement of the plaintiff's fourth amendment rights was clear and direct, in the present case, it appears that appropriate notice of termination and notice of seizure were given to the plaintiff at the time his property was taken. This being the case, the seizure was not so unreasonable as that involved in *Bivens*.

The second factor required to be considered toward the implication of causes of action is whether congressional activity in the field indicates an intent to allow such a remedy, or at least not to deny the remedy. It is with this factor that the strongest reasons for not implying a cause of action under either the fourth or fifth amendments in the present case are found; for here, congressional indications that no such remedy is to be allowed are clearly evident. First, the Federal Tort Claims Act specifically excludes claims against the United States if they relate to the assessment or collection of taxes.[24] Second, as further indication of congressional intent that the assessment and collection of federal taxes are to be free from judicial intervention, section 7421(a) of the Internal Revenue Code [25] prohibits any suit to restrain the assessment or collection of taxes. Finally, the fact that alternative measures for the contesting of tax assessments are provid-

**23.** *Id.* at 797, citing *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. 2080.

**24.** 28 U.S.C. § 2080(c).

**25.** 26 U.S.C.A. § 7421(a).

ed,[26] is indicative of further congressional intent that individual liability for Internal Revenue officials is not to be implied.

The third factor required to be considered in determining whether to imply a federal common law cause of action is whether implication of such a remedy would be consistent with the purpose of the constitutional right asserted. As noted in *Davis* the breadth of the fifth amendment due process clause indicates that implication of a damage remedy from its provisions would be judicially unmanageable.[27] Further, while the breadth of the fourth amendment is more limited, the extensive statutory regulation of Internal Revenue matters (regulation which was not existent to the same degree over narcotics officials in *Bivens*) suggests that implication of a private cause of action would be inconsistent with the statutory scheme enacted by Congress.

The final factor to be considered under *Cort v. Ash* is whether the implied action would be one appropriate for federal law. With regard to the fifth amendment claim, implication of a cause of action in the current case would present the same problems as those recognized by the Fifth Circuit in *Davis*. As Judge Clark pointed out in that decision, "Because of the breadth of due process, a decision implying an action for money damages from the fifth amendment Due Process Clause alone would extend an action for damages to any constitutional guarantee." [28] Similarly, although the same problems of breadth of the constitutional provision are not present with the fourth amendment claims, significant difficulties are still encountered. While the matter of abuse of IRS authority is obviously not a matter "traditionally relegated to state law," [29] the fact that extensive, specific congressional regulation of federal taxation already exists indicates that neither is

the matter one appropriate for *implied* federal law. Rather, it is a matter which can best be managed by further congressional refinements as these are deemed necessary.

The final consideration with regard to whether a constitutional cause of action is to be implied in this case is whether, notwithstanding congressional action or inaction, a damage action is indispensible to the effectuation of the constitutional rights asserted. Here again, the court concludes that such an action is not constitutionally compelled. In the face of assertions of protected fourth and fifth amendment claims, it is not to be forgotten that the power of *Congress* "to lay and collect taxes" is also constitutionally-mandated.[30] Pursuant to this authority, Congress has enacted one of this nation's most comprehensive legislative schemes. Adequate provision is made a part of this scheme for the safeguarding of due process and equal protection, and for assurances against unreasonable seizures. The court therefore concludes, that under the facts as here presented, the plaintiff is entitled to no more.

Accordingly, it appears that the plaintiff has not asserted a claim "aris[ing] under the Constitution, laws, or treaties of the United States." Therefore, this court has no jurisdiction to entertain the merits of the litigation. Absent jurisdiction over the subject matter of plaintiff's complaint, the action must be dismissed. Judgment to this effect shall be entered by separate order.

Done this the 11th day of August, 1978.

(s) <u>Sam C. Pointer, Jr.</u>
United States District Judge
Sam C. Pointer, Jr.

---

26. 26 U.S.C.A. § 6213(a) allows a taxpayer, within 90 days after notice of deficiency, to file a petition with the Tax Court for a redetermination of the deficiency. Further, 28 U.S.C. § 1346(a)(1) grants jurisdiction to the district courts for actions against the United States for the recovery of any tax allegedly erroneously or illegally assessed or collected.

27. 571 F.2d at 799.

28. *Id.* at 799–800.

29. *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. 2080.

30. U.S.Const., amend. XVI.