**Muhammad KENYATTA, Plaintiff,**

v.

**Roy K. MOORE, et al, Defendants.**

**Civ. A. No. J77–0298(L).**

United States District Court,
S.D. Mississippi
Jackson Division.

Nov. 20, 1985.

Shirley Payne, Patrick D. O'Rourke, American Civil Liberties Union of Miss., Jackson, Miss., Jack D. Novik (Pro Hac Vice), American Civil Liberties Union Foundation, New York City, Dennis L. Horn, Horn & Payne, Kenneth J. Rose, Jackson, Miss., David Rudovsky (Pro Hac Vice), Defender Assn. of Philadelphia, Philadelphia, Pa., for plaintiff.

Daniel E. Lynn, Asst. U.S. Atty., Jackson, Miss., Gordon W. Daiger (Pro Hac Vice), Atty., Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., Mary P. Mitchell and Peter R. Wubbenhorst (Pro Hac Vice), for defendants.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion by defendants Roy K. Moore, James O.

Ingram and Thomas Fitzpatrick for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Muhammad Kenyatta filed timely response and the court has considered the memoranda with authorities submitted by the parties. The issue before the court is whether agents of the Federal Bureau of Investigation (F.B.I.), acting pursuant to Bureau directives, can be held individually liable for conspiracy to deprive a person of equal protection of the laws under 42 U.S.C. § 1985(3).

The facts of this case are only briefly summarized.[1] Kenyatta was engaged in civil rights activities in the late 1960's during and shortly after his tenure as a student at Tougaloo College, a predominantly black college on the outskirts of Jackson, Mississippi. Defendants Moore, Ingram and Fitzpatrick were employed as special agents of the F.B.I. and were assigned to the Jackson, Mississippi Field Office during the relevant time period. Pursuant to a series of F.B.I. interdepartmental memoranda, the defendants engaged in a counterintelligence program aimed at gaining information about black nationalist groups and leaders for purposes of exposing and discrediting them.[2] Kenyatta became a target of F.B.I. investigation in the latter part of 1967 when one or more of the defendants caused his name to be placed on the F.B.I. "Rabble Rouser List," later called the F.B.I. "Agitator Index." In April 1969, the agents caused a letter to be sent to Kenyatta which falsely purported to be from the Tougaloo College Defense Committee, a student organization with which Kenyatta was involved. The letter criticized Kenyatta's "conduct and general demeanor" and advised him to stay away from campus or "other measures" would be taken, including reporting his activities to local authorities. Kenyatta left Mississippi shortly after receiving this letter, he asserts, because he relied on its authenticity and believed himself discredited in the eyes of the student body. In August 1969, the defendants gave certain F.B.I. intelligence information on Kenyatta to an attorney inquiring on behalf of the Episcopal Church as to the propriety of continuing church funding of the Jackson Human Rights Project. Kenyatta had participated in the project and he asserts that the subsequent cessation of project funding by the church was directly caused by the dissemination of this information by the defendants. Kenyatta lastly charges that throughout his tenure at Tougaloo the defendants "circulated false and derogatory rumors and allegations" about him to local authorities, Tougaloo faculty and students, defaming his character. Kenyatta's pendent state claims, including the defamation action under Mississippi law, were dismissed from this case by this court's memorandum opinion and order dated September 27, 1985.

Kenyatta's amended complaint alleges that defendants' actions violated his rights protected under the First, Fourth, Fifth and Ninth Amendments to the Constitution of the United States. Under the authority of *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny, Kenyatta asserts that he is entitled to an implied cause of action for

---

1. The record in this cause contains three lengthy discussions of the pertinent facts: two opinions denying summary judgment on plaintiff's pendent state claims—a November 20, 1979 order issued by Magistrate John R. Countiss, III and a September 22, 1983 opinion by Judge Dan M. Russell, Jr.—and a published opinion of the Fifth Circuit denying an interlocutory appeal, *Kenyatta v. Moore*, 744 F.2d 1179 (5th Cir.1984). The factual summary herein duplicates that contained in this court's memorandum opinion and order dated September 27, 1985, granting defendant's motion for summary judgment on plaintiff's pendent state claims.

2. By memorandum from F.B.I. Director J. Edgar Hoover dated August 25, 1967, the agency established a far-reaching counterintelligence program called "COINTELPRO–Black Nationalist Hate Groups" the stated purpose of which was "to expose, disrupt, misdirect, discredit, or otherwise neutralize the activities of black nationalist, hate-type organizations and groupings, their leadership, spokesmen, membership and supporters, and to counter their propensity for violence and civil disorder." (F.B.I. memorandum dated August 25, 1967).

deprivation of constitutional rights and a private damages remedy against the defendants in their individual capacities.[3] Kenyatta also charges that the defendants, acting with racially discriminatory animus, engaged in a conspiracy to deprive him of equal protection of the laws in violation of 42 U.S.C. § 1985(3).[4]

Defendants' instant motion seeks partial judgment on the pleadings on the ground that persons acting under color of federal law are not within the reach of § 1985(3). In a well-stated brief, defendants submit a three-fold argument for precluding the availability of a § 1985(3) cause of action in this case: (1) the legislative intent behind the passage of the Civil Rights Act of 1871, § 2 of which is the parent of § 1985(3), was to curb Ku Klux Klan activities in the Reconstruction South and indeed to protect federal officials, and thus conspiracies by federal officials are not covered by the Act; (2) the concept of equal protection of the laws and equal privileges and immunities under the laws in § 1985(3) necessarily contemplates some involvement by a state or by one acting under color of its authority before a violation can be established; (3) decisional law in the Fifth Circuit indicates that a § 1985(3) cause of action is subject to the same state-action requirement that exists in an action under 42 U.S.C. § 1983, and therefore federal officials acting under color of federal law cannot be held liable under § 1985(3). For the reasons stated hereinafter, this court declines to give iden-

tical construction to the legislative intent behind § 1983 and § 1985(3), and concludes that federal officials can be held individually liable for engaging in a private conspiracy to deprive a person of equal protection of the laws.

## LEGISLATIVE HISTORY

[1] Defendants correctly contend that the "central concern" of the 42d Congress in passing the Civil Rights Act of 1871 was to combat the "violent and other efforts of the Klan and its allies to resist and to frustrate the intended affects [sic] of the Thirteenth, Fourteenth and Fifteenth Amendments ..." *Carpenters v. Scott,* 463 U.S. 825, 837, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). A principal purpose underlying the legislation was to provide, through a private damages remedy, some protection for blacks, union sympathizers and federal officials at work in the Reconstruction South. *Carpenters v. Scott,* 463 U.S. at 837, 103 S.Ct. at 3360; *Griffin v. Breckenridge,* 403 U.S. 88, 100–03, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971); *McCord v. Bailey,* 636 F.2d 606, 615–16 (D.C.Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981). Defendants argue that it would have been "anomalous" for the 42d Congress to have included within the same legislation having the purpose of protecting federal institutions a section imposing liability on those charged with carrying out that difficult purpose and for whose protection the legislation was passed.

---

3. The court is not here concerned with the merits of Kenyatta's *Bivens* action against the defendants in their individual capacities.

4. 42 U.S.C. § 1985(3) provides:

   If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from

   giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

■ In *Griffin v. Breckenridge*, 403 U.S. at 101, 91 S.Ct. at 1797, the Supreme Court held that the cause and relief afforded in § 1985(3) applies to wholly *private* conspiracies. Looking to the clear language and the legislative history of § 1985(3), the Court held that the state-action prerequisite of § 1983 was not intended to be a necessary element in an action under § 1985(3) and that, therefore, any two or more private individuals who conspired with racially discriminatory animus to deprive another of equal protection of the laws could be sued under § 1985(3) regardless of the nature of their employment. 403 U.S. at 99, 91 S.Ct. at 1796. In light of *Griffin*, it would be truly "anomalous" to disregard any state-action component in a suit against private individuals under § 1985(3), yet grant federal employees an absolute immunity simply because of their employment status. A federal employee who uses his office to commit a federal constitutional violation should not be allowed to claim that office as grounds for an absolute immunity defense. *See Bivens*, 403 U.S. 388, 91 S.Ct. at 1999; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In conspiring to commit such constitutional violation with racially discriminatory animus, such federal official is a "person" within the meaning of § 1985(3). *See Hobson v. Wilson*, 737 F.2d 1, 20 (D.C.Cir.1984); *Waller v. Butkovich*, 584 F.Supp. 909, 939 (M.D.N.C.1984).

■ Given the broad language of § 1985(3) and the construction of that language in *Griffin* to cover private conspiracies, this court rejects defendants' contention that federal officials are not "persons" within the meaning of the statute simply because their safety was of some concern to the 42d Congress. Indeed, the major concern of the 42d Congress in promulgating what is now § 1985(3)—to provide "a statutory cause of action for negro citizens who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men." *Griffin*, 403 U.S. at 105, 91 S.Ct. at 1800— would be thwarted by such a holding.

Therefore, the court concludes that there is nothing in the legislative history of § 1985(3) that would exclude conspiratorial private action by federal employees from its coverage.

## EQUAL PROTECTION OF THE LAWS

■ By its specific terms, § 1985(3) proscribes any conspiracy which has "the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ..." Defendants argue that the "essence" of the Equal Protection Clause of the Fourteenth Amendment is a guarantee that citizens of one state will not discriminate against or engage in any disparate treatment of citizens of another state. Thus, defendants reason, the requirement that a conspiracy proscribed by § 1985(3) have as its purpose depriving any person of equal protection of the laws necessarily involves state action in some recognizable form, citing *United States v. Guest*, 383 U.S. 745, 755, 86 S.Ct. 1170, 1176, 16 L.Ed.2d 239 (1966); *Monroe v. Pape*, 365 U.S. 167, 174–77, 81 S.Ct. 473, 477–78, 5 L.Ed.2d 492 (1961). "Analytically and historically," defendants conclude, the doctrine of equal protection is "incapable of application to the federal or national government." This argument fails on several grounds.

First, as was stated by the *Griffin* Court in addressing this same argument,

A century of Fourteenth Amendment adjudication has ... made it understandably difficult to conceive of what might constitute a deprivation of equal protection of the laws by private persons. Yet there is nothing inherent in the phrase that requires that action working the deprivation to come from the state (citations omitted). Indeed, the failure to mention any such requisite can be viewed as an important indication of congressional intent to speak in § 1985(3) of *all* deprivation of 'equal protection of the laws' and 'equal privileges and immuni-

ties under the laws,' whatever their source.

403 U.S. at 97, 91 S.Ct. at 1796 (emphasis original).

■ Second, the source of the congressional power to create a cause of action for private conspiracies does not rest in the Fourteenth Amendment's Equal Protection Clause, as does the cause of action created in § 1983 for deprivation of constitutional rights under color of state law; rather, the power to reach private conspiracies under § 1985(3) emanates from the Thirteenth Amendment. *Griffin*, 403 U.S. at 104–05, 91 S.Ct. at 1799. Congress has the power under the Thirteenth Amendment "to determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation," *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 440, 88 S.Ct. 2186, 2203, 20 L.Ed.2d 1189 (1968), without regard to the existence *vel non* of state action. Federal officials are certainly as capable as state officials of violating the mandates of the Thirteenth Amendment.

Third, since *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the Supreme Court has recognized that the Due Process Clause of the Fifth Amendment contains an equal protection component at least broad enough to bar invidious discrimination by the federal government or its agencies. Except for the state-action requirement, the "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43

L.Ed.2d 514 (1975). Defendants' argument that the 42d Congress could not have foreseen in 1871 the advent of applying the equal protection analysis under the Fifth Amendment in the *Bolling v. Sharpe* line of cases is meritless. This court cannot assume that the 42d Congress sought to sanction invidious discrimination in any form, or only when the discriminatory action came from the federal government. Thus, the patent error of defendants' argument that the doctrine of equal protection is, by definition, inapplicable to the federal government is clear.

FIFTH CIRCUIT PRECEDENT

Defendants rely heavily on two cases from this circuit which held, without analysis of *Griffin v. Breckenridge* or the legislative history of the Civil Rights Act of 1871, that the right of action for civil conspiracy under § 1985(3) does not apply when the defendants are acting under color of federal law. Because this court is of the opinion that a thorough analysis of the legislative history, the Supreme Court's holding in *Griffin*[5] and other recent cases concerning § 1985(3) would lead the Court of Appeals to extend its applicability to persons acting under color of federal law, the court does not view the brief mention of § 1985(3) coverage in these cases as binding precedent.

In *Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), and *Mack v. Alexander*, 575 F.2d 488 (5th Cir.1978), the Fifth Circuit addressed the jurisdictional bases asserted by plaintiffs, two aggrieved taxpayers, in actions against the Internal Revenue Service and various IRS officials for, *inter alia*, deprivation of constitutional rights. Both plaintiffs alleged causes of action under § 1983 and § 1985 and asserted that feder-

---

5. The procedural history of *Griffin* points out the incongruity in defendants' interpretation of the recent Fifth Circuit cases on this issue. *Griffin* was originally filed in this court. Judge Dan M. Russell, Jr. dismissed the suit on the basis of insufficient state action to state a claim under § 1985(3). The Fifth Circuit affirmed, *Griffin v. Breckenridge*, 410 F.2d 817 (5th Cir. 1969), stating that while "it would not surprise us … if § 1985(3) were held to embrace private conspiracies to interfere with rights of national citizenship," it was bound to follow *Collins v.*

*Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), and hold that state action was a prerequisite to a cause of action under § 1985(3). 410 F.2d at 825–26. On certiorari, the Supreme Court reversed. 403 U.S. 88, 91 S.Ct. 1790. Thus, the Fifth Circuit's brief statements on the inapplicability of § 1985(3) to federal officials in *Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), and *Mack v. Alexander*, 575 F.2d 488 (5th Cir.1978), are, in light of *Griffin*, unsupported precedent.

al jurisdiction was conferred by 28 U.S.C. § 1343, the jurisdictional basis for suits under § 1983 and § 1985. In both cases, the Fifth Circuit upheld the district court's dismissal of the actions. The relevant language was stated in *Mack*, 575 F.2d at 489, and quoted in full without further comment in *Seibert*, 594 F.2d at 429:

> Section 1343 places original jurisdiction in the district courts when there is a substantive claim for violation of 42 U.S.C. §§ 1983 and 1985. However, we agree with the district court's ruling that these statutes provide a remedy for deprivation of rights under color of state law and do not apply when the defendants are acting under color of federal law.

Cited in support of this proposition in *Mack* was *Walker v. Blackwell*, 360 F.2d 66 (5th Cir.1966). *Walker* involved a *pro se* appeal by prisoners in a federal penal facility in which they alleged that they had been deprived by prison officials of their constitutional right to practice their religion. They brought the suit under § 1983 and 28 U.S.C. § 1361. In affirming dismissal of the § 1983 action, the Fifth Circuit only stated, "[s]ince these complaints relate to the administration of a United States penitentiary by a federal official, we agree with the district court that they could not be maintained under 42 U.S.C. § 1983." 360 F.2d at 67. No substantive mention whatever was made concerning the § 1985 claim in *Walker*. Thus, it appears that the Fifth Circuit has never engaged in a thorough analysis of § 1985(3) as it relates to federal officials independent of § 1983 and its clearly established state-action requirement. The error in the defendants' argument and analysis based on *Seibert* and *Mack* is in the forced melding of the purpose and reach of the two statutes. This

court does not credit *Seibert*, *Mack* and *Walker* with establishing the broad, exclusionary principle of federal law under § 1985(3) as is asserted by the defendants.

The Fifth Circuit pronouncements on this issue indicate the source of the confusion in the federal courts over this issue: the compelling temptation to construe § 1983 and § 1985(3) exactly the same. While it cannot be denied that the statutes are the product of the same legislative scheme and derive their meaning from the same historical context, a rational construction of them reveals different policies and purposes underlying each.

■ Under *Griffin*, the plaintiff must allege the following elements to state a claim under § 1985(3): (1) the defendants entered into a conspiracy (2) for the purpose of depriving a person of equal protection of the laws, (3) that one or more of the conspirators acted in furtherance of the object of the conspiracy such that (4) the plaintiff was injured in his person or property or deprived of a right or privilege of a citizen of the United States. 403 U.S. at 102–03, 91 S.Ct. at 1798. Conspicuously absent from the *Griffin* elements, derived directly from the statute, is any requirement of state action. The last element under *Griffin*, as recently refined by the Supreme Court in *Carpenters v. Scott*, 463 U.S. at 835, 103 S.Ct. at 3359, is a construction of the language in § 1985(3) requiring intent to deprive one of equal protection of the laws, which "means that there must be some racial, or perhaps otherwise class-based, individiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.[6] Kenyatta has sufficiently alleged the elements of a § 1985(3) cause of action in his amended complaint to meet the test under *Griffin*.

**6.** *Griffin* was an action brought by black residents of Kemper County, Mississippi who were stopped by a group of white citizens on a public highway. The whites were acting under the mistaken impression that one of the blacks in the stopped car was a civil rights worker. The blacks were detained, assaulted and beaten. 403 U.S. at 89, 91 S.Ct. at 1792. Thus, the requisite racially discriminatory animus was clearly present in *Griffin*. *Carpenters v. Scott* was an action brought under § 1985(3) by

workers against a labor union and several individuals who had allegedly assaulted and beaten the workers when they refused to join the union. The Supreme Court held that § 1985(3) cannot be construed to reach conspiracies motivated solely by economic or commercial animus. 463 U.S. at 838, 103 S.Ct. at 3360. Because the *Carpenters v. Scott* Court found the question of the required form of animus to be "dispositive", it did not reach the question of what particular constitutional violations are ac-

■ The critical element of a § 1983 cause of action is that the one working the deprivation of constitutional rights must have done so under color of state authority. By its clear language,[7] § 1983 seeks to remedy only discriminatory state action and not private action in any of its myriad forms. The logical inconsistency of construing the elements, and thereby the protections, of § 1983 and § 1985(3) the same was explained in *Griffin*, 403 U.S. at 99, 91 S.Ct. at 1796.

> An element of the cause of action established by the first section [of the Civil Rights Act of 1871], now 42 U.S.C. § 1983, is that the deprivation complained of must have been inflicted under color of state law. To read any such requirement into § 1985(3) would thus deprive that section of all independent effect ... Given the existence of these three provisions [of the original 1871 Act, now § 1983 and § 1985(3)], it is almost impossible to believe that Congress intended, in the dissimilar language of the portion of § 1985(3) now before us, simply to duplicate the coverage of one or more of them.

Thus, the protection offered in § 1985(3) against conspiracies to deprive citizens of equal protection of the laws is not, in light of § 1983, a mere redundancy. Section 1985(3) has entirely different sources, purposes and effects than § 1983. Deriving its constitutional authority from the Thirteenth Amendment, it is not limited in its purpose to curtailing unconstitutional state action, and its effect is to provide a damages remedy against all private conspirators operating with discriminatory animus regardless of their employment.

RECENT PRECEDENT

Defendants cite a number of decisions to the court, besides the Fifth Circuit decisions in *Seibert* and *Mack*, to support their conclusion that § 1985(3) is inapplicable to federal officials.[8] Most of these cases are based on the assumption that state action is a necessary element in *any* cause of action based upon the present form of the Civil Rights Act of 1871, an assumption expressly rejected in *Griffin. See e.g. Bethea v. Reid*, 445 F.2d 1163, 1164 (3rd Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972). Others rely on a strained overextension of *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), in which the Supreme Court stated the unremarkable conclusion that the Fourteenth Amendment underpinnings of § 1983 require some state action to establish a violation, and therefore federal officials acting solely under color of federal law cannot be sued under § 1983. *See e.g. Ryan v. Cleland*, 531 F.Supp. 724, 733 (E.D.N.Y.1982). In the rare case in which at least a cursory review of the legislative history of § 1985(3) and the significance of *Griffin* is undertaken, the courts misconstrue the elements of a § 1985(3) cause of action as stated in *Griffin*, and indeed insert state action requirements where none are found in the statute or in *Griffin. See, e.g., Sykes v. State of California Dept. of Motor Vehicles*, 497 F.2d 197, 200 (9th Cir.1974). If *Griffin* is

---

tionable under § 1985(3). 463 U.S. at 833–34, 103 S.Ct. at 3358. Unlike *Carpenters v. Scott*, the particular discriminatory animus proscribed in § 1985(3) is clearly alleged here.

**7.** 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of

this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**8.** *Sykes v. State of California Dept. of Motor Vehicles*, 497 F.2d 197, 200 (9th Cir.1974); *Bethea v. Reid*, 445 F.2d 1163, 1164 (3rd Cir.1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972); *Ryan v. Cleland*, 531 F.Supp. 724, 733 (E.D.N.Y.1982); *Lofland v. Myers*, 442 F.Supp. 955, 957 (S.D.N.Y.1977); *White v. Boyle*, 390 F.Supp. 514, 515 (W.D.Va. 1975); *Moore v. Schlesinger*, 384 F.Supp. 163, 165 (D.Colo.1974); *Williams v. Halperin*, 360 F.Supp. 554, 556 (S.D.N.Y.1973).

still valid precedent, as it is under *Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), this court cannot wittingly perpetuate the error in statutory construction committed in the cases cited by the defendants.

The better reasoned view has been adopted in a number of recent cases in which § 1985(3) has been applied to private conspiracies by federal officials.[9] Two of these cases, *Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir.1984), and *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979), involved suits against F.B.I. agents under § 1985(3) for engaging in private conspiracies pursuant to the same F.B.I. COINTELPRO–Black Nationalist program at issue in this suit. In both cases, the courts of appeals held that the respective plaintiffs had stated cognizable causes of action against the individual F.B.I. agents under § 1985(3). *Hobson*, 737 F.2d at 20; *Hampton*, 600 F.2d at 623.

Defendants seek to distinguish *Hobson* and *Hampton* on the ground that they relied on a "one-sided 'animus' analysis" rather than an analysis of the particular problem with which the 42d Congress was faced when it ratified § 2 of the 1871 Act, now § 1985(3). Reiterating in part their legislative history argument, defendants contend that because the opinions in *Hobson* and *Hampton* omit the "fundamental fact" that the federal government was seen as one of the objects and not the source of the wrongs sought to be remedied by the 1871 legislation, the holdings in those cases are suspect if not flatly wrong. This attempt to resuscitate the argument that was laid to rest in *Griffin* cannot succeed. Defendants' corollary argument on the state-action presumption in the equal protection language of § 1985(3) is likewise rejected for the reasons set forth previously in this opinion.

The court is therefore of the opinion that the clear weight of recent authority on this issue is to the effect that § 1985(3) applies to private conspiracies engaged in by federal officials, including those acting to further the stated objectives of the F.B.I. COINTELPRO–Black Nationalist program. The court is further of the opinion that these recent cases reflect the correct view of the legislative history of § 1985(3) and the teaching of *Griffin v. Breckenridge*.

█ In conclusion, the court holds that an individual defendant, regardless of the nature of his employment or official status, who acts with invidious, class-based discriminatory animus and conspires with one or more defendants to deprive another of clearly established constitutional rights can be held liable for money damages under § 1985(3). Kenyatta's amended complaint sufficiently sets out the elements of a cause of action under § 1985(3) to allow this case to go forward to trial.

It is, therefore, ordered that defendants' motion for partial judgment on the pleadings is denied.

---

**9.** *Martinez v. Winner*, 771 F.2d 424, (10th Cir. 1985); *Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir. 1984); *Jafree v. Barber*, 689 F.2d 640 (7th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir.1980); *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926 (10th Cir.1975); *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979); *Waller v. Butkovich*, 584 F.Supp. 909 (M.D.N.C.1984); *Bergman v. United States*, 551 F.Supp. 407 (W.D. Mich.1982); *Peck v. United States*, 470 F.Supp. 1003 (S.D.N.Y.1979); *Alvarez v. Wilson*, 431 F.Supp. 136 (N.D.Ill.1977).