**Marjorie Allen WHITE, Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE, and Director of the Internal Revenue Service at Denver, Colorado, Defendants.**

**Civ. A. No. 80–K–397.**

United States District Court, D. Colorado.

April 13, 1982.

---

3. See *In re Equity Funding Corporation of America*, 416 F.Supp. 161 (C.D.Cal.1976) for the general outlines of this scandal.

Marjorie Allen White, pro se.

Marshall I. Whitley, Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case involves the plaintiff's 1975 federal income taxes. The plaintiff, appearing *pro se*, seeks:

1. a refund of $4,254.41 that she alleges was illegally assessed and collected from her for her 1975 income tax liability;

2. damages of $5,000 from the defendants in their individual capacities for alleged violation of plaintiff's constitutional rights; alternatively, damages in the same amount against the United States for alleged negligent and wrongful acts of IRS officers and staff relating to plaintiff's 1975 tax return;[1] and

3. $5,000 for the cost of bringing this suit; $5,000 for attorney fees, and an unspecified amount of interest if plaintiff prevails on her refund claim.

The defendants moved to dismiss, and, alternatively, for summary judgment. Without considering any materials outside of the complaint, I conclude that the claims for damages, costs and attorney fees should be dismissed. On the refund claim, I must consider materials outside of the pleadings, and therefore I will treat the motion with respect to the refund claims as one for summary judgment. I grant that motion in part and deny it in part.

## I. SUBJECT–MATTER JURISDICTION

The numerous grounds which the defendants advance to support dismissal for lack of subject-matter jurisdiction relate to two fundamental questions which underlie every suit in district court involving a dispute between a taxpayer and the IRS. These questions are: (1) what conditions are necessary to invoke federal jurisdiction to review actions and decisions of the IRS; and (2) what remedies are available in district court for a meritorious claim against the IRS. Because of the confusion regarding remedies and jurisdiction reflected in the plaintiff's complaint and the defendants' brief I will review these issues before addressing the specific facts of this case.

District courts are courts of limited jurisdiction, having only the subject-matter jurisdiction conferred on them by congress. There are currently only two statutes which provide a jurisdictional basis for district courts to hear claims involving the IRS: 28 U.S.C. § 1346(a)(1) and 28 U.S.C. § 1331(a). Under 28 U.S.C. § 1346(a)(1) district courts have original jurisdiction of:

Any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected. . . .

In order to invoke jurisdiction under section 1346(a)(1) three conditions must be met: (1) the claim must be against the United States and not against individual IRS officers, 26 U.S.C. § 7422(f); (2) plaintiff must file a timely refund claim with the IRS, 26 U.S.C. § 7422(a); and (3) plaintiff must prepay all deficiency assessments for the year in question, *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on rehearing*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

---

1. Plaintiff's damage claims are not stated clearly. I set them out here as I understand them from viewing the complaint as a whole. F.R. Civ.P. 8(a)(2) requires that the complaint be a short, concise statement showing that the plaintiff is entitled to relief. Plaintiff's complaint is vague and repetitive throughout. However, Rule 8 is to be construed liberally and a complaint that gives the defendant "fair notice of what plaintiff's claim is and the grounds upon which it rests" complies with the rule. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). Also, I am not to hold *pro se* plaintiffs to the same standard that I impose on trained lawyers. See *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam). I conclude that plaintiff's complaint complies with Rule 8.

■ In a suit under section 1346(a)(1) plaintiff may challenge the constitutionality, legality or fairness of any tax statute or any practice of the IRS, as well as the amount assessed or collected. However, in order to prevail on a claim under this section plaintiff must show that the IRS collected taxes it had no right to collect and, therefore, that the amount actually collected was incorrect. If plaintiff establishes that an improper amount was collected, her only remedy is a refund of the over payment. District courts have no jurisdiction under this statute to award any damages in excess of the refund amount.

This jurisdictional limitation was described in *American Association of Commodity Traders v. Department of the Treasury*, 598 F.2d 1233, 1235 (1st Cir. 1979). Noting that the taxpayer had not filed a refund claim under 26 U.S.C. § 7422(a), the court held:

... appellant's recharacterization of its claim for taxes paid as 'damages' will not suffice to supplant the jurisdictional requirement that an administrative claim precede a refund suit.... When the injury claimed is payment of excessive income taxes and the defendant is the United States, no amount of artful pleading will convince us that the case is not a claim for refund of taxes ... appellant's attempt to base jurisdiction for its other damage claims upon 28 U.S.C. § 1346(b) [2] is defeated by two clear provisions of the Federal Tort Claims Act. We have little doubt that this suit falls within the FTCA exclusion of claims 'in respect of the assessment or collection of any tax...' 28 U.S.C. § 2680(c).[3]

■ Damage suits against the United States involving the IRS have also been held to be barred by 28 U.S.C. § 2680(a) which provides that remedies available under the Federal Tort Claims Act shall not apply to:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

and by 28 U.S.C. § 2680(h) which prohibits damage suits against the United States for claims:

... arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights....

See *American Association of Commodity Traders*, 598 F.2d at 1235; *Mack v. Alexander*, 575 F.2d 488 (5th Cir. 1978). Jurisdiction over damage claims against the United States is not conferred by the Administrative Procedure Act and it does not arise under 28 U.S.C. § 1343, as the plaintiff argues:

Section 1343 places original jurisdiction in the district courts when there is a substantive claim for violation of 42 U.S.C. Sections 1983 and 1985. However ... these statutes provide a remedy for deprivation of right under color of state law and do not apply when the defendants are acting under color of federal laws.

*Id.* at 489 (citation omitted).

■ A taxpayer may also challenge the constitutionality of the tax laws and the

2. 28 U.S.C. § 1346(b) provides, in relevant part:
... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

3. 28 U.S.C. § 2680(c) provides that the remedies available under the Federal Tort Claims Act shall not extend to:
Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

legality and fairness of IRS practices and procedures under 28 U.S.C. § 1331(a). Meritorious claims under this statute are not compensable in damages from the United States, *American Association of Commodity Traders*, 598 F.2d at 1235–36, but may be brought against government officials who are personally liable for deprivations of constitutional rights, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, IRS officials are absolutely immune from damages resulting from their decisions to initiate or continue proceedings such as audits and assessments, which are subject to later IRS adjudication. *Butz v. Economou*, 438 U.S. 478, 515–16, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978); *Stankevitz v. IRS*, 640 F.2d 205, 206 (9th Cir. 1981).

■ In order to recover damages from an IRS official in his individual capacity under Section 1331(a) personal jurisdiction must be acquired through service of process under F.R.Civ.P. 4(d)(1) or (7), the plaintiff must allege and prove specific allegations of unconstitutional conduct by the individual official she seeks to hold liable, and plaintiff must demonstrate a lack of good faith and actions beyond defendant's authority. *Griffith v. Nixon*, 518 F.2d 1195, 1196 (2d Cir.), *cert. denied*, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Oldland v. Kurtz*, 528 F.Supp. 316, 319, 321–22 (D.Colo.1981); *Harrison v. Sulser*, 47 A.F.T.R.2d 81–500 (1980).

In the present case this court has subject-matter jurisdiction under 28 U.S.C. § 1346(a)(1) to hear the refund claims, and under *id.* § 1331(a) to hear the damage claims against the defendants in their individual capacities. The record is unclear on whether the individual defendants have been properly served. I conclude, however, that even if they were properly served, the damage claims must be dismissed under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II. THE DAMAGE CLAIMS: IRS PRACTICE AND PROCEDURES

In her damage claims, the plaintiff lists several actions by the defendants that the plaintiff believes were unconstitutional. In *Oldland v. Kurtz*, 528 F.Supp. 316, 321–22 (D.Colo.1981), I considered similar claims and found them to be without merit. Rather than repeat that analysis here, I will only consider the claims that are different from those asserted in *Oldland*.

### A. *Disclosure to State Tax Officials*

■ The plaintiff asserts that the IRS violated her constitutional rights by notifying the Colorado Department of Revenue of the audit and deficiency assessment against her. She claims that this type of disclosure is prohibited by the Confidentiality and Disclosure of Returns and Return Information Statute, 26 U.S.C. § 6103. Section 6103(d)(1) provides, in relevant part:

—Returns and return information with respect to taxes imposed ... shall be open to inspection by, or disclosure to, any State agency, body or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws, including any procedures with respect to locating any person who may be entitled to a refund. Such inspection shall be permitted, or such disclosure made, only upon written request by the head of such agency, body or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the returns or return information on behalf of such agency. ...

The defendants state that there is a standing agreement between the Executive Director of the Colorado Department of Revenue and the Commissioner of Internal Revenue to exchange information regarding agreed upon audit adjustments. This practice has been held to be permissible under the statute. *Davis v. United States*, 47 A.F.T.R.2d 81–454, 456–457 (1980).

### B. *Notice of Deficiency*

■ The plaintiff contends that she was deprived of her right to a redetermination

of the deficiency assessment in tax court. She alleges that she did not receive a notice of deficiency and, therefore, could not challenge the assessment in tax court. The government asserts that a notice of deficiency was not sent to plaintiff because she signed and returned a consent to assessment and collection form (1902–E), which was enclosed with the statement of the proposed audit adjustments. The consent to collection form states in part:

I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings of this report.

Plaintiff argues that her consent was effectively nullified by a letter she enclosed with the signed form stating that she consented under protest. She argues that the IRS indicated that it viewed the protest letter as a nullification of her consent because the IRS subsequently sent her a second consent form, which she refused to sign.

It appears from the pleadings that, with the exception of sending the second consent form, the IRS consistently dealt with plaintiff's tax matters on the basis that she had signed the consent form. The plaintiff cites no authority to support her contention that the effect of the letter was to compel the IRS to disregard her signature on the form. I find no merit in this argument.

### C. Levy on Plaintiff's Wages

■ Plaintiff states that the IRS levy on her wages exempted only $50 a week. She alleges that the amount of the levy was unlawful. However, 26 U.S.C. § 6334(d)(1) provides that:

—In the case of an individual who is paid or receives all of his wages, salary, and other income on a weekly basis, the amount of the wages, salary, and other income payable to or received by him during any week which is exempt from levy . . . shall be—

(A) $50.00 . . . .

There is a provision in this statute for an exemption of an additional $15 for every dependent. Plaintiff does not allege that she was entitled to the additional exemption. Therefore, the amount of the levy was lawful.

### D. Harassment, Malfeasance, Personal Vendetta and Outrageous Conduct

■ The complaint contains allegations of harassment, malfeasance, personal vendetta and outrageous conduct. These allegations are conclusory. After reviewing the pleadings, I conclude that the IRS procedures and practices and the actions of individual IRS officials which the plaintiff appears to challenge are authorized by statutes and have previously been held to be constitutional.

Even though *pro se* complaints are to be construed liberally, the allegations must be supported by material facts. C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–98 (1975). Because this complaint does not contain any sufficient allegations of unconstitutional conduct by either defendant, I dismiss the damage claims.

### III. THE REFUND CLAIM

■ Although this court has jurisdiction to hear the refund claim, I must, pursuant to 26 U.S.C. § 7422(f)(2), substitute the United States as the sole defendant.

### A. Background

Federal income tax withheld from plaintiff's wages during 1975 totaled $4,434.04. Plaintiff's tax return for 1975 stated a tax liability of $292.74 and requested a refund of the net overpayment if $4,141.30. The IRS corrected a subtraction error, which increased plaintiff's tax liability to $660.74. Shortly after the plaintiff filed her return, she was notified of the correction and advised that she would receive a refund of $3,773.30 if she did not owe any other taxes. Although there was no indication that she owed additional taxes, plaintiff's refund check was for $3,682.29, $91.01 less than the IRS had indicated.

When the plaintiff's return was subsequently audited, the IRS disallowed depend-

ency exemptions plaintiff claimed for her son and daughter-in-law. The IRS also disallowed deductions for federal taxes, medical insurance premiums, and costs of renovating a rental property. The IRS also determined that the plaintiff owed a self-employment tax on her earnings as a freelance court reporter. On the basis of this audit, the IRS concluded that the plaintiff owed the government $3,243.90 in taxes and interest fees. The IRS also imposed a negligence penalty of $166.70 [4] and assessed interest of $180.26, for a total deficiency of $3,590.86.

After notifying the plaintiff of the outstanding deficiency and issuing notices of levy, the IRS collected $4,163.40 by executing levies on the plaintiff's wages and bank account, and by seizing a 1977 tax overpayment. This $4,163.40 represented the $3,590.86 deficiency, a $3 collection fee, $303.61 accrued interest and $265.93 accrued penalties. While the collection procedures were in progress, the plaintiff sued in this court to restrain further collection. That suit was dismissed, as required by the Anti-injunction Statute, 26 U.S.C. § 7421. *White v. Commissioner*, Civil Action No. 78-K-20 (D.Colo. Mar. 28, 1978).

The plaintiff contested these deficiency assessments when she filed her 1976 tax return. The IRS treated her statement as an informal refund claim, and reviewed and rejected it. Because the plaintiff has now filed a timely refund claim and paid all of the deficiency assessments for her 1975 tax year, and because I have substituted the United States as the sole defendant, this court now has jurisdiction to hear the refund claim.

### B. *Merits of the Refund Claim*

In her complaint, the plaintiff seeks a refund of $4,254.41. This is the sum of the $91.01 allegedly missing from the original refund, $653 allegedly seized from her 1977

tax refund, and $3,510.40 collected from the levies on her wages and bank account. She asserts six grounds for her refund claim.

### 1. *The Negligence Penalty*

The plaintiff argues that she cannot properly be assessed the five percent negligence penalty because she demonstrated her intent to comply with the Internal Revenue Code by including with her return the statement:

These are the facts and figures. If I have made the wrong conclusion, please correct whatever is necessary.

She notes that when she made this statement the government had already collected $4,434.04 in withholding taxes, more than enough to cover the total tax liability that the IRS eventually found.

■■■■ The statement filed with plaintiff's tax return does not provide a defense to liability for the negligence penalty. 26 U.S.C. § 6653(a) provides, in relevant part:

If any part of any underpayment . . . is due to negligence or intentional disregard of rules and regulations . . . there shall be added to the tax an amount equal to 5 percent of the underpayment.

In computing her tax liability for 1975, plaintiff deducted $3,004 for federal taxes paid. 26 U.S.C. § 275(a) provides that:

No deduction shall be allowed for . . . (1) Federal income taxes, including . . . (C) the tax withheld at source on wages. . . .

Moreover, the commonly used tax return forms, including form 1040, clearly indicate how federal taxes are to be treated in computing taxable income. Therefore, I conclude that plaintiff had actual or constructive notice that federal taxes are not deductible and that the deduction she took can only be attributable to negligence or an intentional disregard of the rules and regulations.[5] Under 26 U.S.C. § 6653(a), if a negligence penalty is appropriate with re-

---

**4.** 26 U.S.C. § 6653(a) authorizes a negligence penalty of five percent of the underpayment. Five percent of $3,243.90 is $162.20. I do not know why the penalty was $4.50 more than this.

**5.** In reaching this conclusion, I rely on the law as stated in the Internal Revenue Code and on the instructions included with the IRS tax return forms. The disallowance of the same de-

gard to any portion of an underpayment, the five percent penalty is imposed on the entire deficiency. *Bianchi v. Commissioner,* 66 T.C. 324, 335 (1976), *aff'd,* 39 A.F.T.R.2d 894 (2d Cir. 1977). Because the plaintiff's negligence caused at least part of the underpayment, the negligence penalty was properly imposed. However, if it is resolved at later proceedings that the plaintiff's 1975 tax liability should be reduced below the current amount determined by the IRS, then the negligence penalty will have to be reduced accordingly.

### 2. The disputed $91.01

As I noted earlier, the plaintiff alleges that, on March 22, 1976, she received an adjustment notice from the IRS, indicating that she was entitled to a refund of $3,773.30, if she owed no additional taxes, and that on the same day she received a refund check for $3,682.29, $91.01 less than what the IRS had indicated. The plaintiff argues that she has made numerous unsuccessful attempts to recover this $91.01 and that she is still entitled to it.

In its motion for summary judgment the government states that it sent a check for that amount to the plaintiff on May 7, 1976. It also attaches a copy of this check, with an endorsement "Marjorie A. White," as an exhibit.

When a motion for summary judgment is made and supported by appropriate documents the opposing party may not rest on mere allegations in the pleadings, but must respond in a manner to indicate that there is a genuine issue for trial. F.R. Civ.P. 56(e). Because the plaintiff has not done so here, I conclude that the government properly refunded the $91.01.

### 3. Deductions Relating to Rental Property

In her 1975 return, the plaintiff deducted from her taxable income $6,339.36 for the costs of renovating and repairing a house that she had owned and rented for several years. Most of this renovation work was done by her adult son, who lived in the house without paying rent during 1975. The IRS disallowed this deduction on two grounds: the work was an improvement, rather than a repair, and, the house was not rental property in 1975.

26 U.S.C. § 263(a)(1) provides that no deduction for a capital expenditure shall be allowed for:

> Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

An improvement, within the meaning of the code, is a change which adds value to the property or appreciably prolongs its life. *Illinois Merchants Trust Co. Ex. v. Commissioner,* 4 B.T.A. 103, 106 (1926). The plaintiff does not dispute the government's contention that most of the expenditures were incurred in the course of adding rooms and remodeling existing rooms. The disallowance of all renovation expenses was clearly appropriate. However, the government acknowledged that some of the costs reported by the plaintiff may be attributable to repairs. Repairs are deductible under 26 U.S.C. § 212(2) if related to the "management, conservation, or maintenance of property held for the production of income." Therefore, if the plaintiff held the house in 1975 for the production of income, then a deduction should have been allowed for the portion of the expenses that was properly attributable to repairs, but not for that portion attributable to improvements.[6]

The government also argues that the deduction was properly disallowed because the house was not income property

---

duction on plaintiff's 1974 return by the IRS and subsequently by the tax court is not an additional justification for the negligence penalty, as the government implies. Plaintiff was not notified of the 1974 disallowance until June 1977, and her suit in tax court on this issue was *not decided until January 1979.*

**6.** Capital expenditures in income property may be depreciated under 26 U.S.C. § 167. There is no indication, however, that the plaintiff sought to do this here.

for the plaintiff in 1975, because the tenant, her son, paid no rent. The plaintiff responds that the house was in fact rental property, and that she had reported rental income from it on her 1972, 1973, and 1974 income tax returns. She alleges that, during 1975, her son did not pay her any rent, but that his repair and renovation work was sufficient to make the house income property.

In *Commissioner v. Kowalski,* 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977), the U. S. Supreme Court interpreted 26 U.S.C. § 61, which taxes "all income from whatever source derived." The court stated that, in passing this statute,

> Congress applied no limitations as to source of taxable receipts, nor restrictive labels as to their nature, but intended to tax all gains except those specifically exempted.

*Id.* at 82–83, 98 S.Ct. at 318–19 (quoting *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 429–30, 75 S.Ct. 473, 475–76, 99 L.Ed. 483 (1955)). Considering this broad definition of income, it appears that the work done on plaintiff's house by her son was income to her. I therefore reject both the government's argument that her house was not income property during 1975, and the plaintiff's statement that this income did not have to be reported on her 1975 tax return.[7]

Viewing the disputed facts in the light most favorable to the plaintiff, as I must on this motion for summary judgment, I conclude that at least some of the disallowed expenses relating to plaintiff's house may have been properly deductible. They were deductible if, and only if, the house was in fact income property during 1975 and the expenses were properly attributable to repairs on the house, rather than to improvements. Because this issue cannot be resolved on the uncontroverted facts currently before me, I deny summary judgment on this issue.

---

**7.** The government may now be barred by the statute of limitations from asserting that the plaintiff underreported her income in 1975.

### 4. *Dependency Exemptions*

■ The IRS also disallowed exemptions that the plaintiff had claimed for her adult son and for his wife. The exemption was properly disallowed for her son under 26 U.S.C. § 151(e)(1), because he was over 19 years old, earned more than $750, and was not a student. It was properly disallowed for plaintiff's daughter-in-law under *id.* § 151(e)(2) because she filed a joint return with the plaintiff's son.

### 5. *Insurance Premium Deductions*

■ The IRS also disallowed a deduction that the plaintiff had claimed for medical insurance premiums that she had paid on a policy for her son and daughter-in-law. These were properly disallowed under 26 U.S.C. § 213(a) because the beneficiaries of these policies were not dependents of the taxpayers.

### 6. *Estoppel*

■ The plaintiff contends that the IRS should be estopped from disallowing all or part of her 1975 deductions and exemptions for three reasons:

a. having encouraged her to rely on the initial statement of her tax liability by sending her a refund check for a net overpayment in 1975, the IRS is estopped from redetermining her tax liability after the date of the refund check;

b. the IRS denied her a permissible dependency exemption by not informing her that if her son filed an amended separate return she could properly claim his wife as a dependent. The plaintiff argues that the IRS auditor's failure to advise her of this constitutes a breach of duty which prevents the IRS from disallowing the claimed exemptions;

c. the rental property deduction cannot be disallowed because in taking it she relied on information and advice obtained by telephoning an IRS assistance number.

Because neither party has addressed this issue, I will not consider it on this motion.

The plaintiffs' estoppel argument is without merit. See generally *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d (1957). In her suit in tax court regarding her 1974 return, she also argued that deficiencies could not be determined once the taxpayer received a refund check. In that proceeding the tax court held that:

> The procedure followed by respondent is authorized by regulations, see sec. 310.-6402–4, Proced. & Admin.Reg., and is followed particularly when taxes withheld exceed the amount of tax shown to be due on the return, and is for the benefit of taxpayers in refunding claimed overpayments prior to complete audits of returns which may take several years .... Clearly the respondent is not bound by or limited to the adjustments....

*White v. Commissioner*, ¶ 79,006 P–H Memo TC (1979). I considered a similar argument in *Louderback v. United States*, 500 F.Supp. 575, 579 (D.Colo.1980):

> The Internal Revenue Service cannot be held to have induced the filing of an erroneous return and the taxpayer cannot rely on its acceptance.
>
> In addition, an Internal Revenue Service agent does not have authority to make a final determination binding on the government, and therefore an erroneous statement made by an agent cannot be considered binding. When prior inconsistent advice has been given, the estoppel doctrine does not prevent the Internal Revenue Service from correcting errors of law, which are correctable in any open year. It is settled that the Internal Revenue Service cannot be estopped from assessing and collecting the proper excise tax for the years in question.

(citations omitted).

## IV. COSTS AND ATTORNEY FEES

▆▆▆ The plaintiff ₁also seeks $5,000 for her costs of bringing this suit and $5,000 in attorney fees. Absent a specific statute authorizing them, attorney fees are not awardable unless the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Part of the plaintiff's complaint was based on a deprivation of her civil rights. She therefore might have been entitled to attorney fees under 42 U.S.C. § 1988, had she prevailed on these claims. However, because I have dismissed all of the damage claims, she cannot receive any attorney fees under this statute. Although it is possible that the plaintiff will eventually prevail on some of her refund claims, no statute authorizes attorney fees for plaintiffs who succeed under this statute. From the record before me there is no indication that the plaintiff will be entitled to any attorney fees, even if she prevails on some of her refund claims.

## V. AN ADDENDUM

This case appears to have arisen when the plaintiff claimed several deductions on her 1975 income tax return that were clearly not allowed. The dispute then was escalated when the IRS was unable promptly, accurately, and fairly to correct the plaintiff's return. While I find that the IRS's inability to administer effectively the federal income tax system is shocking, I also conclude that congress has largely barred courts from ordering appropriate remedies. Most of the confusion results from congress passing laws creating an income tax system that is so complicated that even the IRS admits it cannot completely understand it. However, in spite of my belief that the system is so complex that it often is unworkable, I am obligated to attempt to uphold the income tax system. Any changes and improvements in the system must come from congress, rather than from the courts.

IT IS ORDERED that defendants' motion to dismiss, applied to all claims except those relating to a refund of the plaintiff's 1975 income taxes, is granted. All of the claims against the named defendants are dismissed. Each party to bear his or her own costs. It is further

ORDERED that, pursuant to 26 U.S.C. § 7422(f)(2), the United States of America

is substituted as the sole defendant of all refund claims relating to the plaintiff's 1975 tax year. It is further

ORDERED that defendant's motion for summary judgment, applied to the refund claims, is granted in part and denied in part. Insofar as the refund claim is based on disallowed deductions for the repair of (but not for the improvement or renovation of) her alleged income property, the motion is denied. In all other respects, the motion is granted. It is further

ORDERED that this case is referred to Magistrate Hilber Schauer for an attempted settlement of the remaining refund claims and, if necessary, for the preparation of a new pre-trial order that is limited to the remaining refund claims.

**Debra Ann Kradzinski CELANO**

v.

**Joseph Anthony CELANO and Robert M. John.**

**Civ. A. No. 81–312.**

United States District Court, E. D. Pennsylvania.

April 13, 1982.

Lawrence H. Rudnick, Montgomery County Legal Aid, Philadelphia, Pa., for plaintiff.

Harry R. Nixon, Schneider, Nixon & John, Hatboro, Pa., for defendant John.

Michael H. Kaliner, Legal Aid of Chester County, Inc., Coatesville, Pa., for defendant Celano.

## MEMORANDUM

GILES, District Judge.

Plaintiff, Debra Ann Kradzinski Celano, has filed suit against her former husband, Joseph A. Celano and his attorney, Robert M. John, Esquire, under 42 U.S.C.A. § 1983,[1] alleging, *inter alia*, that Celano and

---

1. 42 U.S.C.A. § 1983 (West, 1981) provides, in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

John, the attorney representing her husband in the couple's custody and visitation rights dispute, were responsible for a series of misrepresentations made to the presiding state court judge, as a result of which she was wrongfully incarcerated. John has filed a motion to dismiss pursuant to Fed.R. Civ.Pro. 12(b)(6), contending that the Amended Complaint fails to state a cause of action against him and that this court lacks subject-matter jurisdiction because plaintiff's incarceration was not effected under color of state law as required by section 1983. Since materials outside the pleadings have been submitted by both parties, I must treat defendant's motion to dismiss as one for summary judgment. Fed.R.Civ.Pro. 12(b). For the reasons stated below, the motion will be granted.

Fed.R.Civ.Pro. 56(c) provides that summary judgment may be granted whenever judgment is appropriate as a matter of law and there exists no genuine issue of material fact. In moving for summary judgment, defendant John has the burden of showing the absence of a genuine issue as to a material fact, and for this purpose the documents considered outside the pleadings must be considered in the light most favorable to plaintiff, as the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party sustains its burden, however, plaintiff must come forward with opposing evidentiary matter showing the existence of a disputed issue of material fact. *Id.* The undisputed facts can be gleaned from the attachments to plaintiff's Amended Complaint and the transcript of the hearing held before Judge Moss on June 3, 1980, to which both parties refer.

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.