John B. CAMERON, Jr., Plaintiff,

v.

INTERNAL REVENUE SERVICE; John
A. Dietrich; and William D.
Whitesides, Defendants.

Civ. No. F 84–37.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 25, 1984.

John B. Cameron, Jr., pro se.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., Peter Sklarew, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## ORDER

LEE, District Judge.

This matter is before the court on defendants' "Motion to Dismiss or for a More Definite Statement and for an Award of Attorneys' Fees and Costs" filed April 26, 1984, plaintiff's Motion for Summary Judgment filed March 22, 1984, and plaintiff's Motion to Lift the Stay of Proceedings entered April 30, 1984. For the following reasons, the court will grant defendants' Motion to Dismiss after its conversion into a motion for summary judgment, will grant defendants' motion for award of fees and costs, and will deny plaintiff's motions for summary judgment and lifting of the stay of proceedings.

Plaintiff is proceeding *pro se*. *Pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This court also recognizes that federal courts have historically exercised great tolerance to insure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. *Pro se* complaints, such as plaintiff's, are held to less stringent pleading requirements; technical rigor in the examination of such pleadings is inappropriate.

In addition to the complaint, plaintiff has filed voluminous motions and other papers with the court. Liberally construing both the complaint and these numerous filings, it appears that plaintiff is seeking injunctive relief and damages against the Internal Revenue Service ("IRS") and its agents for attempts to assess taxes against him, for attempts to levy against plaintiff's wages and property, for treatment by various agents during plaintiff's attempts to get tax refunds or file returns, and for attempts to assess statutory penalties and interest against him. A succinct summary of plaintiff's various claims against the defendants can be made by breaking them down into two groups: (1) plaintiff believes the tax laws and IRS regulations do not apply to him because (a) the tax regulations are unconstitutional as a violation of the separation of powers between the branches of government; and (b) wages do not fall under the statutory provisions for income because they are part of an equal exchange of wages for services rendered, and thus have no element of profit or gain. The second group of claims alleges that the defendants acted wrongfully because (a) their actions denied plaintiff due process; (b) their actions violated plaintiff's first, fourth and fifth amendment rights; (c) defendants' assessments against plaintiff constituted a Bill of Attainder and/or Bill of Pains and Penalties in violation of the Constitution; (d) the forms used by the IRS are illegal and therefore void because they carry no Office of Management and Budget number and do not state whether filling out the form is voluntary or not; and (e) that the defendants acted in bad faith by scheduling meetings at inconvenient times and not keeping appointments. The jurisdiction for this complaint is alleged to rest on the following statutory provisions: 26 U.S.C. §§ 7421, 7425, 7428; 28 U.S.C. § 1340; and 42 U.S.C. §§ 1981, 1983, and 1986.

The defendants responded by filing a motion to dismiss. The motion has two major assertions: that none of the named parties can be sued; and that none of the various claims outlined above state a claim upon

which relief can be granted. The motion also seeks fees and costs for defending this case.

Plaintiff has moved for summary judgment on the same basic grounds as alleged above. Plaintiff has also filed a motion to lift the stay of proceedings entered by this court on April 30, 1984.

The court begins by analyzing the motion to dismiss.

## I. MOTION TO DISMISS

Although the defendants have characterized their motion as a motion to dismiss, it is clear that the issues presented by this motion are best addressed after reference is made to the exhibits and other pleadings in this case. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b).

■ Under Rule 56(c), summary judgment may only be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the fact is necessary." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975).

■ In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.,* 549 F.2d 42 (7th Cir.1977). A party may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983). *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* C. Wright, *Law of Federal Courts,* § 99 (4th ed. 1983); 6 *Moore's Federal Practice,* § 56.15 (2d ed. 1983).

■ Thus, the moving party must demonstrate the absence of a genuine issue of material fact. The court views all evidence submitted in favor of the non-moving party. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Ass'n.,* 693 F.2d 636, 639 (7th Cir.1982). Further, if the court resolves all factual disputes in favor of the non-moving party and still finds summary judgment in favor of the moving party is correct as a matter of law, then the moving party is entitled to summary judgment in his favor. *Egger,* 710 F.2d at 297. *See also Bishop v. Wood,* 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

■ Although not raised by the defendants directly in their motion, the court turns first to the issue of whether a proper basis of jurisdiction exists for hearing this cause. Because of the limited nature of a district court's jurisdiction, the court may inquire into its jurisdiction *sua sponte. Rice v. Rice Foundation,* 610 F.2d 471 (7th Cir.1979).

### A. Jurisdiction

Plaintiff asserts a total of seven bases for jurisdiction: 28 U.S.C. § 1340, a general jurisdiction statute; 26 U.S.C. §§ 7421, 7425, and 7428, which are all provisions of the Internal Revenue Code; and 42 U.S.C. §§ 1981, 1983, and 1986, all provisions of the Civil Rights Act. The court will analyze these bases in turn.

#### 1. General Jurisdiction

The general jurisdiction statute offered by plaintiff, 28 U.S.C. § 1340, provides:

The district court shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or

tonnage except matters within the jurisdiction of the Court of International Trade.

The question of whether plaintiff can rely on this provision as a basis for jurisdiction hinges on whether this statute itself provides plaintiff with a cause of action.

■ The very language of the statute militates against such a construction. Section 1340 gives jurisdiction for an action arising under the Internal Revenue laws; as such, the suit must be based on some cause of action which the Internal Revenue Code recognizes and allows the plaintiff to bring. Absent some recognition of this kind of suit under the Internal Revenue Code, however, § 1340 will not create an independent basis for jurisdiction. Rather, § 1340 is designed merely to give a district court jurisdiction should it find a separate basis for the claim. As one court has noted, "Given the limitations which Article III of the Constitution places on the jurisdiction of the federal courts, it is doubtful that the various jurisdictional statutes [like § 1340] could do more than waive the congressionally imposed jurisdictional amount requirement." *Crown Cork & Seal Co. v. Pennsylvania Human Relations Comm.*, 463 F.Supp. 120, 127 n. 8 (E.D.Pa.1979).

■ It appears that this case does not arise under the Internal Revenue Code. Plaintiff does not seek either to enforce any provision of the Code or to pursue a statutory remedy under the Code. (*See* "Plaintiff's Answer and Rebuttal to Defendants Motion to Dismiss" ¶ 10—"this is not a tax refund suit"). True, the plaintiff does cite some statutory provisions as being violated (*see* Complaint ¶ 7.0, referring to 26 U.S.C. § 6001, that only Secretary of Treasury may assess taxes against him; Plaintiff's Answer and Rebuttal to Defendants Motion to Dismiss, ¶ 12, referring to § 3401, that plaintiff is not an employee as defined by the Code, and ¶ 18, referring to a non-existent § 1746, that no one is required to file a tax return unwillingly). However, those references are not bases for a claim, but rather are offered to prove plaintiff's more general argument that the Internal Revenue Code does not apply to him at all. In fact, the whole thrust of

plaintiff's case is that he is outside the scope of the Code so that the actions of the defendants are violations of his rights. However, if the plaintiff's claim comes from outside the Code, then it logically cannot "arise under" the Code, and therefore § 1340 cannot provide plaintiff with jurisdiction.

■ A second possible source of jurisdiction is 28 U.S.C. § 1331, the federal question jurisdiction statute. Plaintiff claims, at least in part, that the tax laws do not apply to him because the laws and regulations are unconstitutional. This is sufficient to give rise to some kind of federal question jurisdiction based on the constitutional issues involved in such a claim. However, not all aspects of the plaintiff's claim are cognizable under this jurisdiction.

Plaintiff has made clear that he does not seek a tax refund. Rather, he wants injunctive relief and damages. Whether injunctive relief is even available to the plaintiff will be discussed in the next section of this order. As to damages, however, the plaintiff must show that he can recover damages for violations stemming from the defendants' alleged unconstitutional activity. Plaintiff can obtain damages against the defendants under only one of two theories: a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680; or an implied cause of action under the principles of *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). As will be more fully discussed in section I.B of this order, a claim under the Federal Tort Claims Act will fail on principles of sovereign immunity. Furthermore, in *Seibert v. Baptist*, 594 F.2d 423, 429–32 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), the court refused to recognize a *Bivens*-type cause of action against the IRS and IRS officials and agents. The actions of the present defendants in assessing the taxes and penalties against the plaintiff and in generally operating under the IRS regulatory framework were not of the outrageous nature of those found in *Bivens*. This court agrees with the *Seibert* court and refuses to rec-

ognize a *Bivens*-type cause of action against the IRS or IRS officials and agents for the collection and assessment of taxes.

Thus, while a federal question may exist, it provides no basis for plaintiff to recover injunctive relief or damages. At the very best, it would allow this court to declare the Internal Revenue Code unconstitutional (which the court *does not do*) as a prelude to a refund suit, which plaintiff explicitly states he is not now pursuing. In short, federal question jurisdiction does not support plaintiff's suit.

Overall, plaintiff cannot rely on either one of the general jurisdictional statutes to provide a basis for his suit. While federal question jurisdiction exists, it is an extremely limited jurisdiction from a remedial standpoint.

### 2. Code Provisions

Plaintiff cites three sections of the Internal Revenue Code as bases for jurisdiction: 26 U.S.C. §§ 7421, 7425, and 7428. None of these provisions provide plaintiff with sufficient jurisdiction.

Section 7421 is an anti-injunction provision which provides:

> Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

Thus, other than the exceptions listed (none of which apply to this case [1]), a person

cannot sue to enjoin the assessment or collection of taxes. This section does not create jurisdiction; in fact, this provision limits jurisdiction by prohibiting injunctive relief. Thus, plaintiff cannot rely on this statute for jurisdictional purposes. *See Hutchinson v. United States*, 677 F.2d 1322 (9th Cir.1982). Further, this provision effectively prevents plaintiff from getting the injunctive relief he seeks. As such, defendants are entitled to summary judgment as a matter of law on plaintiff's request for injunctive relief.

The second provision cited by plaintiff, § 7425, does not create a cause of action at all. Although titled "Discharge of Liens," which plaintiff seeks to have done with the liens against his property, this section relates only to the effect of judgments and sales on the tax lien of the United States. In short, the section merely acts to control the discharge of liens in actions where the United States is a party; it does not contain any mechanism for discharging a lien against a taxpayer's property. Therefore, plaintiff cannot maintain this suit on the basis of this statutory provision.

The third section cited by the plaintiff, § 7428, relates to declaratory judgment actions concerning tax exempt status for organizations. Section 7428 allows for filing of a suit seeking a declaration that an organization meets the initial or continuing qualifications of a tax exempt organization under the code. However, (b)(1) of the section limits who can be the petitioner in such a declaratory judgment action to the organization itself. Here, plaintiff has

---

**1.** Section 6212(a) and (c) prevents the Secretary from making any more determinations of a taxpayer's liability for a given year after the taxpayer petitions the Tax Court for a redetermination of liability. Section 6213(a) prevents the Secretary from executing a levy during the pendency of a petition to the Tax Court to redetermine liability. Section 6672(b) prohibits a levy during the pendency of a suit to determine the taxpayer's liability for penalties assessed for failure to pay taxes or for evading taxes. Section 7426(a) allows a person with an interest in property other than the taxpayer to sue the United States, and § 7426(b)(1) allows for injunctive relief if such a person can show irreparable injury from a levy or sale of the property. None of these exceptions apply here.

The Supreme Court has recognized one judicially-created exception to the anti-injunction provisions of the Code. Under *Enochs v. Williams Packing and Navigation Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), an injunction may be granted if the plaintiff can show that (1) under the most liberal view of the facts and law, the government cannot prevail on the merits, and (2) special circumstances indicate that the plaintiff does not have an adequate remedy at law. Here, the first element is absent because the government will in fact prevail on the merits (see Section I.C *infra*). The second element is also absent because the plaintiff could sue for a refund. Therefore, the *Enochs* exception does not apply.

made brief reference to his "Church" and supposed first amendment violations by the defendants. In his "Answer and Rebuttal to Defendants Motion to Dismiss," plaintiff states that he, and not his church, is the one suing for violation of the first amendment. (*See* ¶ 10). As such, § 7428 cannot be involved because the wrong petitioner is suing the defendants.

It is therefore clear that none of the provisions of the Code cited by plaintiff can provide a jurisdictional basis for his suit. Furthermore, the court can find no provision of the Code under which plaintiff could proceed because plaintiff has specifically denied that this is a tax refund suit.

### 3. Civil Rights Statutes

Plaintiff has also asserted three civil rights provisions, 42 U.S.C. §§ 1981, 1983, and 1986, as jurisdictional grounds for this action. However, none of those provisions can give plaintiff jurisdiction here. Section 1981 is restricted by the import of its language to discrimination based on race or color. *Virginia v. Rives*, 100 U.S. 313, 25 L.Ed. 667 (1880); *Willingham v. Macon Telegraph Publishing Co.*, 482 F.2d 535, 537 n. 1 (5th Cir.1973). In fact, the language of § 1981 militates against plaintiff's case, because the section provides that "all persons" shall be subject to taxes. Section 1983 prohibits deprivation of rights under color of state law. However, actions of IRS officials, even if beyond the scope of their official duties, are acts done under color of federal law and not state law, thus making § 1983 inapplicable. *Seibert v. Baptist*, 594 F.2d 423 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir.1978). Section 1986 creates a cause of action for failure or neglect to prevent a

§ 1985 conspiracy. However, § 1985(1) deals with conspiring to prevent an official from discharging his duties, while 1985(2) deals with obstructing justice, both of which are inapplicable here. Section 1985(3) requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), none of which is alleged to be present here. It is therefore obvious that none of these statutory provisions can provide plaintiff with a basis for suit.

On the issue of jurisdiction, then, this court finds that it has no jurisdiction over any of plaintiff's claims with the exception of extremely limited federal question jurisdiction over the question of the constitutionality of the Internal Revenue Code. However, out of an abundance of caution and a desire to give plaintiff a full review of his case, the court continues by analyzing the other issues by the Motion to Dismiss.

### B. The "Suability" of the Defendants

A main thrust of defendants' Motion to Dismiss is that none of the named defendants can be sued. Plaintiff has named three [2] defendants: the IRS; William D. Whitesides, whom plaintiff states is an "Agent of the IRS, in whose duty it was this last time to fully research and examine the Plaintiffs tax liability and who acted in bad faith by turning this over to the collection division ...;" and John A. Dietrich, "Agent and head of the Collection Department of the [IRS] ... [who] was given this case by Mr. Whitesides ... [and] made out the last lien placed against the plaintiff." Because defendants' arguments revolve

---

**2.** Plaintiff also names "Et Alii e Contra," which he describes as "each and everyone involved as well as those that were in any office or authority that could have E-stopped [sic] this action ... including people that the plaintiff wrote to for help and corresponded with in the past" as well as others who did not supply requested information. Complaint, ¶ 6.5 of Section VI. The court cannot consider these nameless people to be in any way personally liable because they have no notice of the claim against them, and plaintiff,

more than any one else, is or should be aware of their identity. As such, the court will not consider any of these nameless individuals as defendants. However, if the court were to consider these individuals as defendants, their liability would be judged on the same basis as Whitesides' and Dietrich's, for the description given by plaintiff indicates that all of these individuals were acting in their official capacity. See *infra* Part I.B.2.

around the status of these defendants and whether such status allows the particular defendant to be sued, the court will analyze each defendant separately.

### 1. The Internal Revenue Service

The core of defendants' argument about the inability of plaintiff to sue the IRS is the doctrine of sovereign immunity. It is well settled that the United States is a sovereign and, as such, is immune from suit without its prior consent. *United States v. Shaw,* 309 U.S. 495, 500–01, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); *Hutchinson v. United States,* 677 F.2d 1322, 1327 (9th Cir.1982); *Akers v. United States,* 539 F.Supp. 831, 832 (D.Conn.1982), *affd* 718 F.2d 1084 (2d Cir.1983). Absent consent to sue, dismissal of the action is required. *Hutchinson,* 677 F.2d at 1327. The United States has waived its immunity with respect to some causes of action in the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–2680. However, the Act, in § 2680(c), specifically excluded "any claim arising in respect of the assessment or collection of any tax or customs duty...." It is thus clear that the United States has specifically reserved its immunity with respect to claims arising out of tax collection and assessment. Thus, to the extent that any part of plaintiff's complaint can be construed as a claim against the United States, it is barred by the doctrine of sovereign immunity. *See Hutchinson; Seibert v. Baptist,* 594 F.2d 423 (5th Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *White v. Commissioner,* 537 F.Supp. 679, 684 (D.Colo.1982).

Plaintiff has attempted to make clear that his claim is not against the United States, but rather against the IRS. That is of little help to plaintiff because courts have found that the actions of the IRS or its agents fall under the Federal Tort Claims Act exception for collection and assessment of taxes. *See Morris v. United States,* 521 F.2d 872, 874 (9th Cir. 1975); *Spilman v. Crebo,* 561 F.Supp. 652, 654–55 (D.Mont.1982). It is therefore clear that the IRS is immune from suit for tax collection or assessment activities.

Plaintiff apparently believes that this conclusion is avoided by his assertion that the IRS is a "private corporation," and not a part of the United States. The court can find no argument for this proposition in any of the plaintiff's filings. The best guess at the logic behind this assertion is that, because the plaintiff believes that the IRS is operating outside the Constitution and the Internal Revenue Code, it is no longer operating as part of the government. No authority is cited (nor can the court finds any) for the proposition that a government agency can become a private corporation by misconduct. Rather, it is clear that Congress gave the Secretary of the Treasury full authority to administer and enforce the Internal Revenue Code, 26 U.S.C. § 7801, and the power to create an agency to administer and enforce the laws. *See* 26 U.S.C. § 7803(a). Pursuant to that legislative grant of authority, the Secretary of the Treasury created the IRS, 26 C.F.R. § 601.101, so that the IRS is an agency of the Department of the Treasury. As such, the IRS is *not* a private corporation, and enjoys the sovereign immunity of the United States. It is therefore entitled to summary judgment as a matter of law.

### 2. The Individual Defendants

Plaintiff names two IRS agents who handled his case as defendants. It appears that plaintiff's complaint against these individual defendants centers around their treatment of his file, and is thus a complaint about their activities in their official capacities in assessing taxes and penalties against the plaintiff, as well as dealing with him after such assessments were made. The defendants have responded by asserting two reasons to dismiss the claims against them: improper service and immunity.

Defendants' improper service argument centers on the mode of service effected on the individual defendants. It claims that the individual defendants were not served personally as is required under Federal Rule of Civil Procedure 4(d)(1) because service was effected by sending copies of the complaint and summons by certi-

fied mail addressed to each of the two individual defendants at the office of the IRS in Fort Wayne, Indiana. Such service is sufficient under Fed.R.Civ.P. 4(d)(5) for service of process upon an officer or agency of the United States. However, plaintiff seeks to sue the individual defendants in their individual capacity, and as the defendants correctly point out, "where money damages are sought from a public official in his individual capacity, service by mail under Rule 4(d)(5) is insufficient." *Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir. 1980). *Accord Relf v. Gasch*, 511 F.2d 804 (D.C.Cir.1975); *Marsh v. Kitchen*, 480 F.2d 1270 (2d Cir.1973). Thus, plaintiff has not yet properly served the individual defendants, but such improper service is not fatal to plaintiff's case. The court therefore turns to defendants' second basis for dismissal: immunity.

■ As was noted earlier, the United States has not waived its sovereign immunity with respect to claims arising out of tax assessment or collection. One cannot avoid this sovereign immunity by simply naming officials when the judgment would impact upon the public treasury. *Vishnevsky v. United States*, 581 F.2d 1249, 1255 (7th Cir.1978). At least one court has held that a suit against IRS officials in their official capacity is a suit against the United States, *see Nelson v. Regan*, 560 F.Supp. 1101 (D.Conn.1983), so that sovereign immunity would preclude the suit.

■ The United States Supreme Court, in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), discussed the parameters of the immunity that a federal executive officer enjoys within the parameters of a federal agency position. The Court found that a federal official enjoyed only a qualified immunity, so that he could be liable individually if he knows or should have known that he is acting outside the law. *Id.* at 506–07, 98 S.Ct. at 2911. The Court recognized, however, that some officials need absolute immunity because it is "essential for the conduct of the public business." *Id.* at 507, 98 S.Ct. at 2911. Some courts have read *Butz* as giving absolute immunity to IRS officials in actions for damages. *Hutchinson v. United*

*States*, 677 F.2d 1322 (9th Cir.1982); *Stankevitz v. IRS*, 640 F.2d 205 (9th Cir.1981); *Krzyske v. Commissioner*, 548 F.Supp. 101 (E.D.Mich.1982); *White v. Commissioner*, 537 F.Supp. 679, 684 (D.Colo.1982). If the officials are alleged to have exceeded their authority and to have operated outside the scope of their official duties, then only the qualified immunity applies. *Hutchinson*, 677 F.2d at 1328; *Nelson v. Regan*, 560 F.Supp. 1101 (D.Conn.1983); *Spilman v. Crebo*, 561 F.Supp. 652, 655–56 (D.Mont. 1982). In order to present a situation where only the qualified immunity will apply, the complaint must contain specific allegations of the unconstitutional conduct by the official, *White*, 537 F.Supp. at 684, and must allege the specific statutory provision under which the official exceeded his authority. *Spilman*, 561 F.Supp. at 655–56.

■ The tenor of plaintiff's complaint is that he seeks damages from the individual defendants for acts done in their official capacities. The complaint focuses on actions taken by the defendants while handling plaintiff's file. Certainly, the computation of tax liability and the turning over of a file to the Collection Department are acts done within the official duties of an IRS agent. Therefore, the absolute immunity applies and the suit against the individual defendants must fail.

■ The argument that the defendants are not entitled to absolute immunity because they exceeded their official authority must fail for lack of specificity. While the complaint claims the defendants acted unconstitutionally, it does so in very conclusory terms. The structure of plaintiff's argument is such that a major reason for concluding the defendants' acts were unconstitutional is that the Internal Revenue Code exceeds the constitutional power of the Executive Branch. The only allegation which has some specificity is that the individual defendants acted in "bad faith." However, the only support for this claim is that (1) "defendants" set up appointments inconvenient to the plaintiff, did not keep appointments or answer certain questions

(Complaint ¶ 6.3); (2) that the defendants did such things as make plaintiff file a return to get his money back (Complaint ¶ 5.6), corrected plaintiff's return (¶ 5.7), did not tell plaintiff how to file a 1040 form without waiving his rights (¶ 6.1), and turned over information to the Justice Department (¶ 6.9); and (3) handled his file. None of these allegations specified the individual defendants as the persons who actually engaged in these particular activities. Thus, the complaint does not contain specific allegations of the unconstitutional conduct by the official, *White*, 537 F.Supp. at 684. Nor does the complaint allege the specific statutory provision under which the official exceeded his authority. *Spilman*, 561 F.Supp. at 655–56. In fact, these allegations only reinforce the conclusion that the thrust of plaintiff's complaint is against IRS officials performing their official duties. Even under the liberal construction principles of *Haines v. Kerner*, this complaint does not make out a claim against the individual defendants for exceeding their official authority. Therefore, the absolute immunity applies, and the defendants cannot be sued.

It is clear that all of the defendants cannot be sued because all are protected by immunity. There is no material fact in dispute, and the defendants are entitled to judgment as a matter of law. Therefore, the defendants are entitled to summary judgment on the basis of their inability to be sued. Out of an abundance of caution, however, the court turns to the merits of plaintiff's suit in case the court's analysis of jurisdiction and immunity is incomplete.

## C. Merits of the Claim

As outlined earlier in this order, the plaintiff's claims can be broken down into two groups: a set of two arguments as to why the tax laws do not apply to the plaintiff, and a group of five kinds of wrongful acts which plaintiff alleges the defendants committed. The defendants have contended that all of these arguments and claims are meritless and frivolous, justifying dismissal in their own right. The court turns to these seven arguments in turn.

### 1. Constitutionality of the IRS Regulations

The first argument offered by plaintiff to show that the tax laws do not apply to him is that the IRS regulations are unconstitutional. As best as can be surmised from plaintiff's filings, the thrust behind this argument is twofold: the administrative enforcement structure of the IRS and the Secretary's ability to make regulations exceeds the authority of the Executive Branch of the federal government by making the IRS lawmaker, judge and enforcer of the law (Plaintiff's Memorandum in Support of Motion for Summary Judgment ¶¶ 4–12); and that the IRS regulations are unconstitutional because the Administrative Procedure Act permits such a violation of the separation of powers (¶¶ 13–16). In effect, the plaintiff claims that the Internal Revenue Code does not apply to him because it is an unconstitutional delegation of authority to the IRS, and therefore has no legal force.

The constitutionality of income tax laws, enacted pursuant to the sixteenth amendment, has long been established. *Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916); *United States v. Campbell*, 619 F.2d 765, 767 (8th Cir.1980); *Crowe v. Commissioner*, 396 F.2d 766 (8th Cir.1968); *Swallow v. United States*, 325 F.2d 97 (10th Cir.1963), *cert. denied*, 377 U.S. 951, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964). An analysis of the Internal Revenue Code reveals that plaintiff's separation of powers argument is specious. Congress granted the Secretary of the Treasury the power to make rules and regulations under the Code, 26 U.S.C. § 7801, and the power to create the IRS, 26 U.S.C. § 7803(a). It is entirely proper for Congress to delegate broad powers to executives to determine the details of a legislative scheme through implementing regulations. *United States v. Rock Royal Co-operative, Inc.*, 307 U.S. 533, 574, 59 S.Ct. 993, 1013, 83 L.Ed. 1446 (1939); *Santise v. Schweiker*, 676 F.2d 925, 933 (3d Cir.1982). The IRS regulations clearly fall within the permissible limits of delegation of powers.

Nor is there any infringement upon the judicial power, as convictions for violations of the tax laws must be obtained in courts of law, and the use of the Tax Court does not deny a taxpayer any rights. *See Bagur v. Commissioner*, 603 F.2d 491, 500 n. 11 (5th Cir.1979). The court thus finds that the doctrine of separation of powers is not violated by the Code or by IRS regulations enacted pursuant to the Code, and thus plaintiff's first argument has no basis in law.

This conclusion is sound regardless of plaintiff's argument that the Administrative Procedure Act (APA) is unconstitutional because the Secretary's power to promulgate regulations under the Code flows from the Code itself, so that the provisions of the APA are not involved in the question of the constitutional propriety of IRS regulations. The court therefore does not consider the APA's constitutionality.

### 2. Wages as Income

Plaintiff's second argument as to why the tax laws do not apply to him is that wages are not taxable because they are not "income" within the meaning of that word. The argument operates from two assumptions: that income means gain or profit; and that an employee receives no income when paid his wages because he exchanges services for an equal amount of compensation, so that his wages constitute no gain or profit. The court finds this argument totally without merit.

Plaintiff cites several old Supreme Court cases for the proposition that income means profit or gain: *Goodrich v. Edwards*, 255 U.S. 527, 41 S.Ct. 390, 65 L.Ed. 758 (1921); *Merchants Loan & Trust Co. v. Smietanka*, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751 (1921); *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1919); *Stratton's Independence v. Howbert*, 231 U.S. 399, 34 S.Ct. 136 (1913), and several old lower federal court decisions based on *Eisner*. However, none of these decisions were intended to be definitive definitions of the concept; all deal with specific questions under specific statutory provisions. The Supreme Court rejected an ar-

gument, based on *Eisner*, that the Code's definition of income is limited to gain in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). The Court specifically stated that the "income as gain" definition of *Eisner* "was not meant to provide a touchstone to all future gross income questions." *Id.* at 431, 75 S.Ct. at 477. More recently the Court rejected the assumption that the current statutory definition of income (in 26 U.S.C. § 61) incorporated the income as gain definition of *Eisner*. *See Commissioner v. Kowalski*, 434 U.S. 77, 94, 98 S.Ct. 315, 325, 54 L.Ed.2d 252 (1977). In that case, the Court also embraced the § 61 definition of gross income, *id.* at 83, 98 S.Ct. at 319, which defines the concept as follows: " ... gross income means all income from whatever source derived, including ... (1) compensation for services...." This analysis has led the Seventh Circuit to declare in the clearest language possible that "WAGES ARE INCOME." *United States v. Koliboske*, 732 F.2d 1328, 1328 n. 1 (7th Cir.1984). Many other courts have reached the same conclusion. *See, e.g., Granzow v. Commissioner*, 739 F.2d 265 at 267 (7th Cir.1984); *Lively v. Commissioner*, 705 F.2d 1017 (8th Cir.1983); *Knighten v. Commissioner*, 702 F.2d 59, 60 (5th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983); *United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir.1981). In *Romero*, the court rejected a "wages are not income" argument, and underscored its conclusion by noting: "Compensation for labor or services, paid in the form of wages or salary, has been universally held by the courts of this republic to be income, subject to the income tax laws currently applicable." *Id.* at 1016.

■ It is therefore unmistakeably clear that plaintiff is wrong in concluding that his wages are not taxable income. The initial assumption behind the argument (that income is gain or profit) is incorrect because it is not exclusive. True, a gain or profit is income. That does not, however, mean that all income must be a gain or profit. Section 61 makes clear that wages are income for taxation purposes, so that

plaintiff's arguments are simply incorrect and without a basis in law.

### 3. Due Process Claims

Plaintiff's complaint lists several actions by the defendants which can be categorized as due process violations in the sense that the actions allegedly take away rights which the plaintiff assumes or claims he had. These claims are: (1) plaintiff was forced to file a tax return to try to get back the money withheld from his paychecks (Complaint ¶ 5.6); (2) the IRS corrected plaintiff's return without his consent or approval (¶ 5.7); (3) the defendants did not tell the plaintiff how to file a 1040 form without waiving his rights (¶ 6.1); (4) by not taking plaintiff to court to show that he owes taxes, defendants forced plaintiff to file suit and thus are shifting the burden of proof to the plaintiff (¶ 6.4); and (5) the defendants allowed plaintiff only a choice of appeal in the tax court (¶ 6.7). As defendants correctly point out, none of these claims have any merit.

 The fact that plaintiff had to file a return to get his money back does not indicate any wrongful conduct on the part of the defendants. Section 7422 of the Code requires that a taxpayer file a claim for a refund before he can sue for the refund. The requirement of filing a return before a refund can be granted makes sense because the IRS cannot judge the validity of a claim for refund without knowing what the taxpayer's liability is. This action by the defendants was therefore not wrongful.

 The correction of mathematical errors in a taxpayer's return by the IRS is impliedly sanctioned by the Code in 26 U.S.C. § 6213(b). Further, § 6020(b)(1) allows the Secretary to make a return for a taxpayer who makes, willingly or otherwise, a false or fraudulent return. These sections indicate that the defendants committed no wrongful act in making corrections on plaintiff's return.

 The alleged failure to inform plaintiff how to file a 1040 form "without waiving his rights" does not support a claim for violation of plaintiff's rights. It is unclear

what rights plaintiff sought to protect when filing the 1040 form. If this refers to some right to be free from taxes, as plaintiff's various documents vaguely suggest, then plaintiff had no right to protect and this claim is without merit. If plaintiff means by this that the IRS is required to recite all of plaintiff's applicable rights (whatever they might be), then this claim is likewise without merit because the defendants are not (nor should they be) required to be plaintiff's attorney. The court cannot conceive of a way that this claim can be anything but without basis in the law.

 The plaintiff's argument concerning the burden of proof asserts that he informed the IRS that "they could take him to Court and try to prove that he owes any taxes" because the Secretary is to have the burden of proof, citing 26 U.S.C. § 7454(a). The wrong alleged by plaintiff is that the defendants have forced him to sue and thus placed the burden of proof on him (Complaint ¶ 6.4). Plaintiff's interpretation of § 7454 is incorrect. That section provides:

> In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary.

Thus, the Secretary's burden of proof under this section relates only to issues of fraud and intent to evade, and not, as plaintiff asserts, to the issue of whether plaintiff owes any taxes. In fact, a brief examination of the statutory machinery indicates that the Secretary's "burden" is to assess taxes. Then, if the taxpayer is dissatisfied, he may petition the Tax Court for a redetermination of a deficiency (§ 6213), or may sue for a refund in the district court (§ 7422). The court therefore finds that the defendants have not shifted any burden of proof, and this claim must fail.

 The last due process-type claim ascertainable from the complaint has to do with the restriction of plaintiff's choice of appeal to the Tax Court (Complaint ¶ 6.7). This claim is also meritless. The Code clearly provides that a taxpayer who wishes to have a deficiency redetermined

must petition the Tax Court. *See* 26 U.S.C. § 6213. Suit for a refund may be had in the district court, but only after the statutory prerequisites of § 7422 have been fulfilled. If plaintiff was seeking to appeal the tax deficiency assessed against him, then the defendants were correct in telling him that his only avenue was the Tax Court. If plaintiff sought a refund, the defendants were not completely wrong, as § 7422(e) indicates that suit for refund in the Tax Court was possible. Plaintiff has not shown nor can the court conceive of a way in which plaintiff's rights were adversely affected by an insistence on appeal or suit only in the Tax Court.

Overall, it appears that none of plaintiff's due process-type claims have any merit, and thus none of them could sustain a cause of action against any of the defendants.

### 4. First, Fourth and Fifth Amendment Concerns

■ Plaintiff has asserted that his first amendment rights were violated because he is a "public minister" and that his "Church" has suffered because of the actions of the defendants. (Complaint ¶ 7.6). Plaintiff has failed, however, to make out a first amendment claim. It is obvious that plaintiff's complaint as a whole revolves around the assessment and withholding of taxes on plaintiff's wages at International Harvester Company. Those wages are not in any way connected to any kind of a church run by plaintiff, and clearly fall within the § 3401(a) definition of "wages." It is not a tax on plaintiff's religious activity or on his "Church." As defendants point out, ministers, priests and other clergy are subject to withholding of taxes on wages just as much as an International Harvester employee.

■ Plaintiff's fourth amendment claim is not found anywhere in the complaint. It appears only in plaintiff's "Statement in Support of Plaintiff's Instrument of Petition for Injunction Against Wage Attachment," filed August 23, 1982. There plaintiff asserts that he has demanded the IRS obtain a "Warrant of Seizure" in order to withhold his personal property via a levy against his wages. The Supreme Court has stated, however, that a tax assessment "is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." *Bull v. United States*, 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935). In *Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931), the Court rejected a due process challenge to the statutory system of collecting taxes without a pre-seizure hearing. The *Phillips* Court held that as long as the taxpayer had an opportunity to have his rights determined after the seizure, the requirements of due process were satisfied. More recently, the Court applied this analysis to fourth amendment concerns as well. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n. 18, 97 S.Ct. 619, 628 n. 18, 50 L.Ed.2d 530 (1977). The Court there found that fourth amendment concerns arise only when there is an invasion of the plaintiff's privacy. Here, no such invasion took place, because the money was levied when it was neither in plaintiff's private possession nor subject to his private control. The claim of fourth amendment violations for failure to obtain a warrant is therefore meritless.

■ Plaintiff's fifth amendment claim is two-fold. The first claim is that plaintiff demanded to be paid his refund in "legal money," because inflation would make the same amount of paper money be worth less value, in violation if his right to "just compensation." (Complaint ¶ 5.8). This claim is defective. Just compensation is available under the fifth amendment only if the government's actions constitute a "taking." Defendants' actions were not a "taking," but a taxation of income under the sixteenth amendment. Without a "taking," a claim for just compensation is groundless. Further, at least one court has found Federal Reserve Notes (or paper money) to be "legal" or "lawful money," *United States v. Rickman*, 638 F.2d 182, 184 (10th Cir. 1980), so that any refund would be of the same value.

■ The second fifth amendment claim rests on the alleged fact that a Privacy Act Notice form sent to plaintiff stated that information may be turned over to the Department of Justice for use against the taxpayer in civil or criminal proceedings. Plaintiff claims this is a violation of his fifth amendment rights, presumably the right against self-incrimination. (Complaint ¶ 6.9). The Seventh Circuit has specifically stated that "we have no hesitation in holding that the Fifth Amendment has no application to the statutory requirement that every citizen must report his entire income even if a taxpayer is thereby compelled to disclose an incriminating fact." *United States v. Oliver*, 505 F.2d 301, 308 (7th Cir.1974). In short, plaintiff does not have a fifth amendment interest to protect when normal tax return information is turned over to the Justice Department, so that his fifth amendment rights could not have been violated.[3]

It is thus clear that plaintiff's claims based on the first, fourth, and fifth amendments are all meritless and without basis in law.

### 5. Bill of Pains and Penalties or Bill of Attainder

The complaint alleges that the assessment of statutory penalties constitutes a Bill of Pains and Penalties which is banned by article I, § 9 of the Constitution. (Complaint ¶¶ 5.3, 6.8). Plaintiff's Memorandum in Support of his summary judgment motion expands the claim to include the Code provisions against interfering with the seizure of property under the Code, 26 U.S.C. § 7212(b). However, because plaintiff's complaint does not indicate in any way that the defendants have attempted to use § 7212(b), but simply offers it as an example of the "tyranny" the IRS is trying to inflict on the public, the court will limit its analysis to the assessment of penalties.

Plaintiff's own definition of a Bill of Attainder is "such special act of the legisla-

ture as inflict capital punishments upon persons supposed to be guilty of high offenses ... without any conviction in the ordinary course of judicial proceedings." A "Bill of Pains" inflicts less severe punishment. Nothing in the plaintiff's complaint or other filings gives any indication that any "special act" was passed by the legislature other than Congress' passage of the Internal Revenue Code. The Code applies to all persons who earn income. To assert that Congress passed the Code to "punish" all wage or income earners is preposterous. By the plaintiff's own definition, then, this claim is meritless.

■ Further, current interpretation of the Bill of Attainder clause of the Constitution excludes plaintiff's claim. To be a bill of attainder, the legislative act must determine guilt and punish an identifiable individual or group of individuals. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977). Here, at least two of these three elements are not met. First, the Code does not determine guilt. Although it authorizes the assessment of taxes and penalties, those assessments can be challenged in the Tax Court or in the district court. Thus, an assessment is not a conclusive determination of "guilt." Secondly, the tax laws do not punish. The mere fact that a law is burdensome does not make it punishment for bill of attainder purposes. *See Nixon, id.* at 470–71, 97 S.Ct. at 2804. However, an assessment of penalties for failure to file income tax returns may be "punishment," but the fact that the penalties can be challenged on appeal means the punishment is not final. The third element, selection of any individual or group of individuals, is not present, as the tax laws apply to all income earners, and the penalty provisions apply to all taxpayers who fail to file. It is thus clear that no Bill of Attainder or Bill of Pains or Penalties exists here.

---

**3.** On a related issue, plaintiff's claim that the 1040 forms are defective because they do not reveal whether the filing of the form is voluntary or mandatory has been specifically rejected as "patently frivolous." *United States v. Wilber,*

696 F.2d 79, 80 (8th Cir.1982). *See United States v. Karsky,* 610 F.2d 548, 549 n. 2 (8th Cir.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1058, 62 L.Ed.2d 781 (1980).

### 6. IRS Forms and Practices

■ Plaintiff claims that he did not have to file a return because the IRS forms did not contain an Office of Management and Budget (OMB) number on them in violation of 44 U.S.C. § 3512, which requires the affixation of an OMB number to any "information collection request." As defendants point out, however, the chapter creating the requirement specifically does not apply to the collection of information during the conduct of an administrative action or investigation involving an agency against specific individuals or entities. 44 U.S.C. § 3518(c)(1)(B)(ii). The process of assessment and collection of taxes quite appropriately falls under this exception to § 3512. Therefore, plaintiff's claim would fail on this count.

■ Plaintiff also claims that the taxes assessed against him are illegal because they were assessed by an IRS agent and not by the Secretary of the Treasury. The argument is premised on the belief that the statutory provisions which state that the "Secretary" will do something should be taken literally. However, as has been discussed previously, the Code grants the Secretary the authority to delegate his duties to an agency like the IRS. *See* 26 U.S.C. § 7803(a). Thus, the actions of the IRS agents in assessing taxes are authorized by the Secretary, and are not illegal. Plaintiff's argument here is also without merit.

### 7. Bad Faith Actions

■ Plaintiff's last claim is that the defendants acted in "bad faith." However, nothing which the plaintiff asserts indicates any basis for a claim. The only thing which defendants did, according to the complaint, is schedule meetings at inconvenient times and fail to keep appointments. As far as this court can tell, there is no recognized cause of action for failing to keep an appointment or schedule a convenient one. Denominating the action as "bad faith" does not alter the fact that the alleged conduct is not actionable. Lacking any indication that the defendants did anything wrong (other than inconvenience the plaintiff), the court cannot hold defendants liable for these actions.

An analysis of defendants' converted motion to dismiss reveals that plaintiff has not asserted a competent basis for jurisdiction, cannot sue any of the defendants because they are immune, and even if he could overcome these two legal hurdles, could not prevail because his complaint contains nothing other than meritless and baseless claims. It is abundantly clear that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. This court will therefore grant the defendants summary judgment on the entire complaint. Plaintiff's motion for summary judgment will be denied as a result.

## II. MOTION FOR FEES AND COSTS

■ The American Rule is that absent specific statutory or other expressed authorization, attorney fees are not recoverable by the prevailing party in a lawsuit. *International Union v. J. Pease Construction Co.*, 541 F.Supp. 1334, 1337 (N.D.Ill.1982). An exception to this rule has been recognized where a losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *Aleyska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975). *See McCandless v. Great Atlantic and Pacific Tea Co.*, 697 F.2d 198 (7th Cir.1983).

■ The Seventh Circuit has made clear that bad faith can include the pursuit of meritless suits. In *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), the court held that insistence on litigating a question in the face of controlling precedents which removed every colorable basis in law for the litigant's position amounted to bad faith justifying an award of fees. *Id.* at 1269–70. In *Reid v. United States*, 715 F.2d 1148 (7th Cir.1983), the Seventh Circuit stated that "the law may be so clear and well established that persistence in a course of litigation could be evidence of bad faith." *Id.* at 1154. Thus, this court has sufficient equitable power to assess sanctions for fees and costs if it

finds that plaintiff's claim is meritless and in bad faith.

A second source of power to impose sanctions is found in the Federal Rules of Civil Procedure. Rule 11, which governs the signing of pleadings and motions, requires that each pleading or motion be signed by an attorney or the party (if the party is proceeding *pro se*). The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

The Notes of the Advisory Committee on the Federal Rules makes it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." The rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), can be taken into account.

The core of Rule 11 is that the signature on the pleading certifies that "to the best of his knowledge, information and belief *formed after reasonable inquiry* it [the pleading, motion or paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." (emphasis added). What is important to note is that this language requires more than just a belief that the law is or should

be a certain way; as the Advisory Committee states, "what constitutes a reasonable inquiry may depend on ... whether the pleading, motion, or other paper was based on a plausible view of the law," and is thus a "more stringent" standard than good faith.

Despite the apparently objective nature of this standard, two recent Seventh Circuit opinions have emphasized that Rule 11 requires a finding of subjective bad faith on the part of the person against whom fees are to be assessed. *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000 at 1006 (7th Cir.1984); *Badillo v. Central Steel and Wire Co.*, 717 F.2d 1160, 1166–67 (7th Cir.1983). What constitutes subjective bad faith is not completely clear, although the *Suslick* court did reemphasize that a claim lacking even a colorable basis in law can justify the award of fees. Slip op. at 11. However, it is clear that the Seventh Circuit has recognized the propriety of assessing fees in cases involving parties who claim not to owe income taxes or who file frivolous tax appeals. *See Granzow v. Commissioner*, 739 F.2d 265 at 269–270 (7th Cir.1984). Other circuits have also awarded costs for groundless actions involving the tax laws. *See Parker v. Commissioner*, 724 F.2d 469 (5th Cir.1984); *United States v. Hart*, 701 F.2d 749, 750 (8th Cir.1983); *McCoy v. Commissioner*, 696 F.2d 1234, 1237 (9th Cir.1983).

Under both general equitable principles and the provisions of Rule 11, this case is clearly one which merits the imposition of sanctions. Here, the plaintiff has argued that the Internal Revenue Code does not apply to him; yet courts have consistently ruled that wages are taxable income. Such argument in light of these clear precedents constitutes insistence on litigating a question in the face of controlling precedents that remove any colorable basis in law for the claim. This is precisely the kind of evidence which justifies a finding of subjective bad faith under the Seventh Circuit standard. Plaintiff's citation to statutory provisions, such as the Anti-Injunction provision, which clearly state that

plaintiff's position is not tenable, is further evidence of a disregard of clear precedent to advance plaintiff's own position. If plaintiff would have been as diligent in researching the law as he apparently was in finding the snippets and out of context quotations which he used to support his position, he would have found that the law does not support any one of his claims. Even under the principles of *Haines v. Kerner*, this court finds that plaintiff's entire suit was frivolous and brought in bad faith.

In an analogous situation, the United States Court of Appeals for the Seventh Circuit stated as follows:

> The doors of this courthouse are, of course, open to good faith appeals of what are honestly thought to be errors of the lower courts. But we can no longer tolerate abuse of the judicial review process by irresponsible taxpayers who press stale and frivolous arguments, without hope of success on the merits, in order to delay or harass the collection of public revenues or for other nonworthy purposes.... Abusers of the tax system have no license to make irresponsible demands on the courts of appeals to consider fanciful arguments put forward in bad faith. In the future we will deal harshly with frivolous tax appeals and will not hesitate to impose even greater sanctions under appropriate circumstances.

*Granzow v. Commissioner of Internal Revenue,* 739 F.2d 265 at 268–269 (7th Cir. 1984). Similarly, the doors of this courthouse are open to good faith litigation, but abuse of the judicial process, as in this case, will not be tolerated.[4] Accordingly, the defendants' request for attorney fees, costs and expenses will be granted. This court finds the reasonable attorney fees to be $500.00.

The court acknowledges the receipt of a letter from plaintiff dated August 21, 1984. The thrust of the letter is to complain about an IRS report sent to the plaintiff which outlines the assessment of 1982 taxes against the plaintiff. Apparently, plaintiff believes this IRS action violates the stay of proceedings ordered in this case. With the granting of summary judgment for the defendants, of course, the stay of proceedings is lifted and the IRS is free to continue all legal efforts to collect plaintiff's delinquent taxes. However, this court also notes that none of the actions taken by the IRS between the date of the order staying the proceedings and this date were in any way violative of that order. The court's order was not an injunction against the IRS; it simply prevented the parties in this case from filing further papers or motions *in this case.* By computing the taxes plaintiff owes for 1982, the IRS did nothing that was germane to this case.

Finally, the disposition of the converted Motion to Dismiss makes plaintiff's Motion to Lift the Stay moot.

### Conclusion

For the foregoing reasons, the court hereby GRANTS summary judgment for the defendants and DENIES plaintiff's motion for summary judgment. Plaintiff's Motion to Lift the Stay is MOOTED. The court also hereby ORDERS the plaintiff to pay defendants $500.00 as reasonable attorney fees for having to defend against this frivolous action.

---

**4.** The greatest harm inflicted by frivolous tax protester suits such as this one is the enormous waste of precious judicial resources they cause. The time needed to dispose of these suits forces needless delay upon litigants with meritorious claims, and this court will no longer tolerate such irresponsible uses of the courts. Rule 11 grants this court full power to impose sanctions upon litigants who file meritless pleadings and arguments. Plaintiff's ignorance of these concerns prompts the court to avoid the imposition of a fine or penalty *in this case only.* Notice is hereby served on all future litigants who seek to press the same stale arguments as were made here: this court will not hesitate to impose fines *in addition to* the assessment of fees and costs on all future attempts to raise these long-defunct arguments. *See Parker v. Commissioner,* 724 F.2d 469, 472 (5th Cir.1984).